# Exhibit 14

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 13-CIV-1174(GBD)
ECF CASE

_____

U.S. COMMODITY FUTURES
TRADING COMMISSION,

                    Plaintiff,

          vs.

WILLIAM BYRNES,
CHRISTOPHER CURTIN,
THE NEW YORK MERCANTILE
EXCHANGE INC., and
ROB EIBSCHUTZ,

          Defendants.



DEPOSITION

OF

BRADLEY HRYCENKO, VIDEOTAPED

TAKEN ON BEHALF OF THE PLAINTIFF




Tuesday, November 3, 2015
9:30 a.m. - 11:32 a.m.




Alberta Securities Commission
Suite 600, 250-5 Street SW
Vermillion Room
Calgary, Alberta, Canada, T2P 0R4

```
1                    APPEARANCES OF COUNSEL

2

3
          On Behalf of the Plaintiff:
4

5              COMMODITY FUTURES TRADING COMMISSION
               140 Broadway, 19th Floor
6              New York, NY  10005
               Telephone:  (646) 746-9767
7              Fax: (646) 746-9940
               E-mail:  pdaly@cftc.gov
8              By:  PATRICK F. DALY, ATTORNEY AT LAW.
               DAVID MACGREGOR, PATRICK CHUDY, AND
9              GABRIELLA GEANULEAS, VIA VIDEO CONFERENCE.

10

11
          On behalf of the Defendant William Byrnes:
12

13             Herskovits PLLC
               1065 Avenue of the Americas
14             New York, New York  10018
               Telephone:  (212) 897-5410
15             Fax: (646) 558-0239
               E-mail:  renita@herskovitslaw.com
16             By: RENITA KHANDUJA, ATTORNEY AT LAW.
               ROB HERSKOVITS, VIA TELEPHONE.
17

18
          On behalf of the Defendant Christopher Curtin:
19
               Menaker & Herrmann LLP
20             10 East 40th Street
               New York, New York  10016
21             Telephone:  (212) 545-1900
               Fax: (212) 545-1656
22             E-mail:  sfa@mhjur.com
               By: SAMUEL F. ABERNETHY, ATTORNEY AT LAW.
23

24

25
```

```
 1        On behalf of the Defendant The New York Mercantile
          Exchange Inc.:
 2

 3            Skadden, Arps, Slate, Meagher & Flom LLP
              155 North Wacker Drive
 4            Chicago, Illinois  60606-1720
              Telephone:  (312) 407-0785
 5            Fax: (312) 407-8572
              E-mail:  al.hogan@skadden.com
 6            By: AL HOGAN, ATTORNEY AT LAW.

 7

 8     Also Present:

 9            BARBARA BAUER, SECURITIES INVESTIGATOR FOR
              THE ALBERTA SECURITIES COMMISSION
10

11
                          -  -  -
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        confidentiality important to you?

 2   A    Yes, it was.

 3   Q    Can you explain why it was important to you.

 4   A    Generally speaking, if you're trading in the illiquid

 5        product, if you're always getting matched up with the

 6        same counterparty, you can kind of guess what his

 7        position is by just kind of -- oh, this -- I got

 8        matched up with them again, and they're the other side

 9        of me.  So basically it's -- you know, potentially

10        could lead into kind of "knowing" another person's

11        position, I guess.  Knowing in quotations -- air

12        quotes.

13   Q    And would you want other traders in the market to know

14        your position as a Nexen trader?

15   A    No.

16   Q    Why not?

17   A    Again, if they know your position, they could be

18        trading against you, they could use a term what's

19        called "running over you" if they know you have to get

20        out of certain positions.

21   Q    When you say the term "running over you," can you

22        explain that term for the record.

23   A    Yeah.  For the record, basically running over is

24        basically knowing that a person has to buy or sell out

25        of a certain trade and basically trading against it.
```

```
 1        so it was more concern over Nexen's reputation.
 2   Q    Okay.  I'm going to direct your attention to the first
 3        sentence of the second paragraph.  Do you see that
 4        sentence?
 5   A    Yes.
 6   Q    Can you please read that sentence into the record.
 7   A    Oh, the second paragraph?  Sorry.  (as read)
 8             In November/December 2010, I had a
 9             suspicious -- suspicions that a broker from
10             Poten Energy Services had specific
11             information regarding some of Nexen --
12             Nexen's -- Nexen -- Nexen's financial --
13             NYMEX financial positions.
14   MR. ABERNETHY:          Tongue twister.
15   A    Yeah, exactly.
16   Q    MR. DALY:          And when you refer to, in this
17        email, "Nexen's NYMEX financial positions," what were
18        you referring to?
19   A    I was referring to our positions that were cleared
20        through NYMEX ClearPort, specifically our calendar
21        spread options.
22   Q    And do you recall the name of the broker you were
23        referring to when you made the reference to a broker
24        from Poten Energy?
25   A    Yes.
```

1   Q   Who was that broker?

2   A   It was Ron Eibschutz.

3   Q   And what were the suspicions you were referring to in

4       this email?

5   A   Basically, again, knowing Nexen's open interest or

6       positions on particular strikes.

7   Q   Okay.  I want to direct your attention to the second

8       sentence of that second paragraph.

9   A   Yes.

10  Q   Can you please read that sentence into the record.

11  A   (as read)

12          This suspicion arose after the broker

13          contacted me saying I might have interest on

14          a particular instrument which happened to be

15          our largest position that month.

16  Q   And what was suspicious about this to you?

17  A   It just seemed very peculiar that it happened to be the

18      largest position that I -- that I had that he was

19      bringing to my attention, not other markets at that

20      point in time.

21  Q   And why was this significant to you as a trader?

22  A   Again, third-party -- people having third-party

23      knowledge of positions was always a concern.  Again,

24      people could run over you.

25  Q   And, again, when you say -- when you use the prase

68

```
 1          you know, depending on the overall marketplace.
 2              Again, if I -- if you know I -- let's say you're a
 3          meat processer.  You know I have a cow, and I have one
 4          cow, but someone else has ten cows.  Well, I only have
 5          one cow, but -- and you know I have a -- you know I
 6          have cattle.  Whether or not you know one or whatever,
 7          it -- from that perspective, you don't know, but if you
 8          have a lot to buy and I have one to sell, well, you
 9          could -- versus going over here.  There's different
10          ways that you can disadvantage myself.
11     Q    Okay.  I think I follow you.  So is it fair to say
12          that, with respect to any particular trade -- let's
13          say, for instance, you're putting on a straddle or
14          you're putting on a butterfly.
15     A    M-hm.
16     Q    Is it fair to say that with respect to any particular
17          trade, somebody would have to know other information to
18          be able to use that to your disadvantage?
19     A    They would have to -- they would not -- well, I'm
20          assuming they wouldn't know what positions I have on
21          already, and if you're layering on another trade, is it
22          reducing risk?  Is it increasing risk?  Is it -- what's
23          it doing?  And specifically, unless, you know, you can
24          see how the open interest moves from the daily reports,
25          but you don't know whether or not I'm closing a
```

```
 1          position or someone else is opening a position, you
 2          know, from that perspective.
 3    Q     Okay.  And coming back to the disclosures that -- the
 4          information that you received from Mr. Eibschutz.
 5    A     M-hm.
 6    Q     Did he ever tell you that he knew whether Nexen was
 7          opening a position or closing a position with respect
 8          to a particular commodity?
 9    A     No.  He'd never say specifically, I know you're long,
10          or, I know you need to do this.
11    Q     And I think I asked you, but I'll say it one more time:
12          He never told you the same information with respect to
13          any other market participants, i.e., whether they were
14          taking on a position or adding to their position or
15          decreasing?  Never gave that information; am I right?
16    A     No.  I would assume that he would not have that
17          information generally.
18    Q     Okay.  For example -- I'll give you an example.  If I
19          tried with you, I know you took -- you know, and
20          somehow it got out to the market that you were the
21          other side, I don't know whether or not you're putting
22          on a position, taking off, whatever?
23    A     You know, a lot of times, brokers will speculate on who
24          the other -- you know, they'll say, Oh.  They'll see a
25          trade going through the block board.  Oh, it must have
```