UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>      Plaintiff,<br><br> v.<br><br>WILLIAM BYRNES,<br>CHRISTOPHER CURTIN,<br>THE NEW YORK MERCANTILE<br>EXCHANGE, INC., and RON EIBSCHUTZ,<br><br>      Defendants. | Case No.  13-CIV-1174 (VSB)<br><br>ECF Case |

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BYRNES'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

                Robert L. Herskovits, Esq.
                Joseph P. Allgor, Esq.
                Herskovits PLLC
                1065 Avenue of the Americas
                27th Floor
                New York, New York 10018
                Phone: (212) 897-5410
                *Attorneys for William Byrnes*

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................... 1

    I.    The Information Byrnes Disclosed Was Not Material ............................................................ 1

        a.    CFTC Regulation 1.59 Does Not Create Any Category of Information That is Material Per Se .................................................................................................. 1

        b.    Byrnes did not Disclose Information "Relating to" a Market Participant's Position ... 3

        c.    There is No Evidence to Permit a Jury to Find Materiality ......................................... 4

        d.    The Disclosures Contained Stale Information ............................................................ 10

    II.    Byrnes Did Not Act with Scienter ....................................................................................... 11

        a.    The CFTC Announced Its Intention to Apply a Scienter Requirement to CFTC Regulation 1.59 ....................................................................................................... 12

        b.    Byrnes' Experience Could Only Lead a Jury to Conclude He Acted Without Scienter ........................................................................................................................ 12

    III.    The Phrase "For Any Purpose Inconsistent with the Performance of Such Person's Official Duties" is Ambiguous ................................................................................................ 13

CONCLUSION ............................................................................................................................ 15

## **TABLE OF AUTHORITIES**

### **CASES**

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................................................ 2

*CFTC v. Byrnes*, 58 F. Supp. 3d 319 (S.D.N.Y. 2014) ................................................................ 14

*CFTC v. Schor*, 478 U.S. 833 (1986) ........................................................................................... 2

*Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142 (2012) ................................................. 2

*In re Time Warner Inc. Sec. Litig.*, 794 F. Supp. 1252 (S.D.N.Y. 1992) .................................... 11

*Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015) .......................................................... 3

### **STATUTES AND REGULATIONS**

7 U.S.C. § 13(e) (2006), CEA § 9(e)(1) ................................................................................ 14, 15

7 U.S.C. § 13(e)(1) (2006), CEA § 9(e)(2) .................................................................................. 14

17 C.F.R. § 1.59(a)(5) ............................................................................................................. *passim*

17 C.F.R. § 1.59(d) .................................................................................................................. *passim*

### **OTHER AUTHORITIES**

Fed R. Evid. 701 ............................................................................................................................ 4

Prohibition on Insider Trading, 58 Fed. Reg. 54966 (Oct. 25, 1993) ................................. 2, 3, 12

Regulatory Accountability Act of 2017, H.R. 5, 115th Cong.
(as passed by House, Jan. 11, 2017) .............................................................................................. 3

Defendant William Byrnes ("Byrnes" or "Defendant") submits this Reply Memorandum of Law in Support of his Motion for Summary Judgment. For the following reasons, and those stated in his cross-motion, summary judgment should be granted in his favor.

## ARGUMENT

### I. The Information Byrnes Disclosed Was Not Material

#### a. CFTC Regulation 1.59 Does Not Create Any Category of Information That is Material *Per Se*

CFTC Regulation 1.59 states as follows:

(5) Material information means information which, if such information were publicly known, would be considered important by a reasonable person in deciding whether to trade a particular commodity interest on a contract market or a swap execution facility, or to clear a swap contract through a derivatives clearing organization. As used in this section, 'material information' includes, but is not limited to, information relating to present or anticipated cash positions, commodity interests, trading strategies, the financial condition of members of self-regulatory organizations or members of linked exchanges or their customers, or the regulatory actions or proposed regulatory actions of a self-regulatory organization or a linked exchange.

Although the second sentence of this provision lists categories of information that *may* be material, it does not create any category of information that is material *per se*. The CFTC admits in its opposition brief that information regarding one category (linked exchanges) is not material *per se*. (*See* CFTC Mem. of Law in Opp'n to Byrnes and Curtin Mot. for Summ. J. (Dk. 170 or "CFTC Opp'n Mem.") at 7 ("one enumerated category – information related to 'linked' exchanges – may not be per se material"). This admission must be applied across-the-board to all categories of information that may be material; there is no basis to conclude that the CFTC intended linked exchanges to have unique treatment.

1

The CFTC wrongfully contends that "Defendants' interpretation would render the second sentence of Regulation 1.59(a)(5) wholly superfluous" and "would contradict the Commission's desire to provide market participants with clarity as to the confidentiality obligations of SRO employees." (CFTC Opp'n Mem. at 7.) The CFTC's "linked exchanges" admission demonstrates that the list provides clarity about items that *may* be material, depending on whether a reasonable person would consider such information important in making a trading decision. *See Prohibition on Insider Trading*, 58 Fed. Reg. 54966, 54971-72 (Oct. 25, 1993) ("the Commission wishes to reiterate that information of this type would be considered 'material' only if a reasonable person would consider it important to making a trading decision").

The law does not require this Court to afford the CFTC's interpretation "significant deference," as the CFTC improperly contends. (*See* CFTC Opp'n Mem. at 8 citing *CFTC v. Schor*, 478 U.S. 833, 844 (1986)). As *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) states, deference to an agency's interpretation applies only where the regulation is ambiguous. Moreover, *Auer* deference does not apply where the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in question." *Christopher v. SmithKline Beecham Corp.,* 567 U.S. 142, 155-56 (2012) (internal citation omitted) (noting that "[t]his might occur when the agency's interpretation conflicts with a prior interpretation, . . . or when it appears that the interpretation is nothing more than a convenient litigating position, . . . or a post hoc rationalizatio[n] advanced by an agency seeking to defend past agency action against attack."). The CFTC's interpretation herein is merely a "convenient litigation position" not

2

entitled to *Auer* deference – the position blatantly conflicts with the CFTC's prior statements interpreting this Regulation.[1] *See* 58 Fed. Reg. 54966, 54971-72.

### b. Byrnes did not Disclose Information "Relating to" a Market Participant's Position[2]

Byrnes maintains that he did not disclose information "relating to" a market participant's position because the information he disclosed did not provide enough information to indicate what that position might be. (*See e.g.,* Byrnes Mem. of Law in Opp'n to Partial Summ. J. (Dk.160 or "Byrnes Opp'n Mem.") at 10 ("Knowledge of a single trade reveals nothing about a market position or anticipated position, unless someone possesses significantly more knowledge regarding a market participant's trading or future plans.")). The CFTC sets up a strawman in mischaracterizing Byrnes's position to be that information "relating to" a market participant's position must ***conclusively*** establish the position. (*See* CFTC Opp'n Mem. at 8). The CFTC knocks down its strawman by arguing that:

> [f]ollowing their logic, no NYMEX employee could ever violate the 'relating to . . . positions' prong of Regulation 1.59, no matter how many confidential trade details they disclosed, because NYMEX personnel did not have access to, and thus would not be able to disclose, a trader's overall or aggregate position.

---

[1] Moreover, the Supreme Court recently questioned whether *Auer* deference should still exist (*see Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199 (2015)), and Congress recently voted to pass a bill that would prohibit *Auer* deference. *See* Regulatory Accountability Act of 2017, H.R. 5, 115th Cong. (as passed by House, Jan. 11, 2017).

[2] The CFTC argues that Byrnes also disclosed "trading strategies" of NYMEX customers. (CFTC Opp'n Mem. at 9 n.5). However, the CFTC's expert admitted that "I don't think a single trade is a strategy." (Decl. of Trevor Kokal in Opp'n to Mot. for Summ. J. (Dk. 181 or "Second Kokal Decl."), Ex. 103, Dep. of Hendrik Bessembinder at 114:17-21). Bessembinder's opinion that the disclosures reveal "elements of strategies" is ambiguous and irrelevant. CFTC Regulation 1.59(a)(5) does not include "elements of strategies" in the definition of material.

3

Byrnes does not contend that disclosure of trading activity is material only if every trade is revealed.[3] Here, no evidence or opinion (even by Plaintiff's expert) exists that Byrnes' disclosures were sufficient to enable someone to make an educated guess as to a market participant's position.

### c. There is No Evidence to Permit a Jury to Find Materiality

The CFTC cites to the testimony of several "fact witnesses" for the proposition that the information Byrnes disclosed was objectively important to a reasonable investor in making a trading decision. Yet no witness, other than Eibschutz, actually witnessed the conduct herein. None heard, first-hand, the conversations between Byrnes and Eibschutz, and none heard a recording or reviewed a transcript of the disclosures.[4] The witnesses' statements cited by the CFTC were made in response to abstract, hypothetical questions. No witness was asked to discuss the importance of the specific disclosures at issue. As such, their testimony is meaningless as to materiality. Byrnes objects to inclusion of testimony by Hrycenko, Holleran and Keating that is nothing more than lay opinion testimony, inadmissible pursuant to Fed R. Evid. 701. However, even if the Court considers this testimony, an examination of these witnesses' statements shows that their opinions do not support the CFTC's argument. The

---

[3] The CFTC's logic is also faulty because although Byrnes lacked access to market participants' strategies and/or positions, it does not follow that no SRO employee could ever have such access. In fact, Keating testified that the NYMEX's Market Regulation Department had information regarding customer positions. (*See* Second Supplemental Decl. of Joseph Allgor ("Third Allgor Decl."), Ex. A, Dep. of Sean Keating dated Feb. 3, 2012 ("Keating Investigative Test.") at 196:11-16).

[4] Keating testified that he listened to one recorded disclosure between Byrnes and Eibschutz during his internal investigation. As detailed below, his testimony regarding the one call he reviewed supports Byrnes' position that the disclosures were not material. (Third Allgor Decl., Ex. A, Keating Investigative Test. at 194:8-195:25.)

4

witnesses consistently testified that knowledge of a trader's position – not one trade – is what makes a disclosure significant for trading purposes.

**Brad Hrycenko**

The CFTC attempts to make much of Hrycenko's limited testimony on the subject of materiality. It falsely states in its opposition that Hrycenko "had concluded from his own communications with Eibschutz that Eibschutz had obtained confidential information about his trading activity." (CFTC Opp'n Mem. at 11). Hrycenko came to no such conclusion and in his contemporaneous communications on the subject he said, "I could just be paranoid." (Decl. of Trevor Kokal in Supp. of Mtn. for Partial Summ. J. (Dk. 153 or "Kokal Decl.") Ex. 33, Email dated June 23, 2011). The CFTC further states that Hrycenko "believed Eibschutz had made inferences about his positions from that information." (CFTC Opp'n Mem. at 11). Hrycenko actually stated that he was concerned that Eibschutz might have information about one position not "his positions" and there is no evidence that Hrycenko's concerns were accurate. There is no evidence that Byrnes disclosed information about Hrycenko's trading to Eibschutz. Thus, Hrycenko's testimony is simply about an abstract concern never shown to be true. Hrycenko's concern about being "run over" is purely hypothetical; there is no evidence it was related to any disclosure made by Byrnes.[5]

---

[5] Hrycenko also testified that information regarding a single trade would be insufficient to disadvantage him. (Decl. of Joseph Allgor in Opp'n to CFTC Mot. for Summ. J. (Dk. 161 or "Second Allgor Decl."), Ex. H, Hrycenko Dep. at 68:11-69:2).

5

**Ron Eibschutz**

The CFTC also cites to a statement made by Eibschutz during investigative testimony in support of its argument that Byrne's disclosures were material. Eibschutz stated that "If people know that BP [presumed to be British Petroleum] is out there they don't want to be on the other side of the trade . . . ." (*Id*. at 12). The phrase "is out there" as used by Eibschutz is describing a *future intention* to purchase or sell. Byrne's agrees that, in a hypothetical case, where market participants *know* that BP is looking to buy or sell natural gas *in the future* they may want to avoid being on the other side of that trade. However, the disclosure of one of BP's prior trades, with nothing more, does not reveal BP's future intentions. Nothing in Eibschutz's hypothetical statement supports the CFTC's position that Byrnes' disclosures gave any actionable indication as to what BP's future intentions might be.[6]

**Sean Keating**

The CFTC has previously cited to Keating's testimony (*Id*.) in support of its arguments, but this testimony does not support the premise that the disclosures were material. Keating stated that "customers don't want others to know or suspect what their positions in the marketplace might be." (*Id*.) Thus material information, according to Keating, is information that would allow someone to know or suspect what a trader's position might be. In this regard, his testimony supports Byrnes' position on materiality. Even the CFTC's expert, Bessembinder,

---

[6] Eibschutz's testimony cited by the CFTC was not taken in connection with this case but during the CFTC's investigation. Neither Byrnes nor Curtin had counsel present to cross examine Eibschutz or to attempt to gain clarity regarding the statements quoted by the CFTC.

could not conclude that Byrnes' disclosures would permit him "to know or suspect what [someone's] positions in the marketplace might be." Bessembinder stated as follows:

> Q. Were you able to come to any informed views about any market participant's aggregate position based on these disclosures?
>
> A. Well, definitely not me, but again, I don't think I'm the relevant party for this discussion.

(Decl. of Joseph Allgor in Supp. of Summ. J. (Dk. 136 or "Allgor Decl."), Ex. D, Dep. of Hendrik Bessembinder dated May 10, 2016 ("Bessembinder Dep.") at 142:5-15).

It is also significant that, when Keating was questioned about the one and only disclosure that he personally reviewed, he determined that it did not tell a market participant anything useful about a trader's position. Keating testified as follows:

> Q. Do you think that market participants would be worried about an adverse impact to their interests if they knew their information was being leaked?
>
> A. I don't know.
>
> \*\*\*
>
> Q. Would you have a fear that the leakage could be used to your detriment?
>
> A. It depends on what's leaked.
>
> Q. If trade details were being leaked on the same day or a T plus one basis, would you be afraid that could be used adversely against you?
>
> A. I don't know if the customer or if the person would know what my position is. They might know that I traded, you know, Cal 13 natural gas swaps, but they wouldn't know what my position is, whether I was long or short or flat. That information is not available. But all they know is that I traded something yesterday or the day before and that –
>
> Q. Or that morning?

A. Maybe. But what I looked at, it was the guy was asking about a prior week, you know, five days ago . . . .

Q. But would it be fair to say whether that concern is actually realized or not, that there would be a concern that this information could be used to your harm if we're talking same day or T plus one?

A. I don't know if it would be deemed to their harm . . . .

Q. Are you saying that there is zero risk of harm to the market participant with this information being disclosed, there is absolutely no way it can be used to their detriment?

A. I don't know the answer to that, but I do know that the broker doesn't know what the customer's position is. He only knows that the customer either bought -- a customer bought and a customer sold, but he doesn't know after that transaction occurred that he found out about, he doesn't know if that made the customer long, short, shorter, longer. The broker doesn't know that. He just knows that the trader transacted.

(Third Allgor Decl., Ex. A, Keating Investigative Test. at 193:25-195:25). As can be seen from this exchange, despite the CFTC's repeated attempts to get Keating to testify that Byrnes' disclosures would disadvantage other traders, Keating was unable to make that conclusion. Instead, he correctly focused on whether a "person would know what my position is. They might know that I traded, you know, Cal 13 natural gas swaps, but they wouldn't know what my position is, whether I was long or short or flat. That information is not available."

### **Thomas Holleran**

The CFTC also cites the testimony of Holleran to support its materiality arguments. Holleran is a Director of Marketing at NYMEX. He has no first-hand knowledge or even second-hand knowledge about Byrnes' disclosures to Eibschutz. Holleran was not asked to listen to any recorded calls nor was he given any transcript to read. His testimony therefore is

merely an opinion (an arguably erroneous one) about a hypothetical scenario. It is also necessary to examine the question that Holleran was responding to when he gave his opinion:

> MR. WHEATON: And would knowing market participants' recent trading activity be valuable to a market participant?
>
> THE WITNESS: Yes.
>
> MR. WHEATON: How would it be valuable?
>
> THE WITNESS: Knowing which direction and which product the customer's trading. There's a lot of basis trading going on, spread trading, so one product -- activity in one product affects others.
>
> MR. WHEATON: And how would that be -- how would that be valuable then?
>
> THE WITNESS: If you know the refiner's coming in and buying gasoline, you know that there's something wrong with the refinery output, and you could jump ahead of that. You also know that the crack spreads are going to explode because he's buying gasoline, not crude oil to run through his refinery.

(Second Kokal Decl., Ex. 106, Investigative Test. of Thomas Holleran at 86:4-22).

When read in context, it is clear that Holleran expressed the same uncontroversial opinion undisputed herein. The parties agree that "[k]nowing which direction and which product the customer's trading" is valuable information. However, the disclosure of one trade without significantly more information does not reveal the direction that someone is trading.

### Nour Beyhum

Beyhum is yet another "witness" who lacks first-hand or second-hand knowledge of Byrnes' disclosures. As such, his opinion about what disclosures would be important to his brokerage customers is meaningless speculation. Moreover, here again, Beyhum's testimony does not support the argument that Byrne's disclosures were material. As the CFTC notes, Beyhum testified "that his client would have a problem with this because he did '***not want***

9

*[others] to know his position.*'" (CFTC Opp'n Mem. at 13).  The concern Beyhum is expressing is that someone would know the trader's position, not one trade.

### CME Group's Data Classification Policy

The CFTC next improperly argues that an inference of materiality exists based on the CME Group's Data Classification Policy's (the "Data Policy") classification of certain information as "Highly Sensitive."  The flaw in this analysis is that the information that Byrnes supplied to Eibschutz does not fit the description of "Highly Sensitive" information as set forth in the Data Policy.  In particular, the Data Policy notes that trade data is "Highly Sensitive" if it consists of "*proprietary information of market participants that would allow an individual to reconstruct trading records*" and information "*from which market positions and/or profit and loss might be derived.*" (Second Kokal Decl., Ex. 113, CME Group's Data Classification Policy at 6) (emphasis added)).  There is no evidence that Byrnes' disclosures would allow someone to "reconstruct trading records" or determine "market positions and/or profit or loss."  As noted above, even the CFTC's own expert, after an extensive review of the disclosures, was unable to make any determination as to what a market participants' position might be based on the information disclosed. (Allgor Decl., Ex. D, Bessembinder Dep. at 142:5-142:15).

### d. The Disclosures Contained Stale Information

The CFTC finally makes the highly misleading argument that the information Byrnes disclosed was not stale because "many of the disclosures related to options that would expire in the future." (CFTC Opp'n Mem. at 20).  The key to successful predatory trading is being able to accurately predict what someone is going to trade in the future. (Allgor Decl., Ex. H, Expert Report of Hendrik Bessembinder at 5).  The information Byrnes disclosed is properly described

as stale because it only tells a market participant what someone traded in the past. Even if a past trade creates a future interest, it is still stale because that trader can immediately (i) trade out of that future interest, (ii) hedge against it, or (iii) may have been closing out a future interest at the time the trade was executed. The disclosure of one trade tells a market participant nothing about that trader's future intentions. Hence, "stale" is an appropriate description for the information Byrnes disclosed. The staleness of the disclosures is significant because the more dated the information is the less important it becomes in the marketplace. *In re Time Warner Inc. Sec. Litig.*, 794 F. Supp. 1252, 1260 (S.D.N.Y. 1992) (finding stale statements immaterial because "innumerable intervening factors" could have occurred since the statements were made.")

## II. Byrnes Did Not Act with Scienter

As a matter of law, scienter did not exist herein because there is no evidence that Byrnes had knowledge of, or was reckless to, the materiality of his disclosures.[7] The CFTC counters that *scienter* is established because:

> 'material information' for the purposes of Section 9(e)(1) and Regulation 1.59 'includes' information relating to customers' positions, and that Byrnes and Curtin plainly knew that the trade data related to customers' positions.

The CFTC's argument is circular because it relies on acceptance of the CFTC's flawed proposition that information can somehow be material even if it would not be considered important in deciding to trade a commodity.

---

[7] The CFTC incorrectly states that Byrnes did not seek summary judgment on the Commission's Regulation 1.59 claim on the issue of *scienter*. Byrnes' motion for summary judgment explicitly noted that the arguments therein "apply equally to the statute and the regulation." (Byrnes Mem. of Law in Supp. of Summ. J. (Dk. 150 or "Byrnes Mem.") at 4 n.5).

In addition, the statement that "Byrnes . . . plainly knew that the trade data related to customers' positions" has no evidentiary support. In fact, the parties to this action are in disagreement as to whether the information disclosed was related to customers' positions. As such, there is no basis for the CFTC to argue that Byrnes plainly knew the information he disclosed related to customers' positions. To the contrary, Byrnes testified that he did not have access to customer positions so it logically follows that he did not believe his disclosures related to customer positions. (Byrnes Rule 56.1 Submission (Dk. 138) ¶ 16).

### a. The CFTC Announced Its Intention to Apply a Scienter Requirement to CFTC Regulation 1.59

The CFTC correctly states that "Regulation 1.59(d)(1) itself contains no scienter requirement" in that it does not contain the words "willfully and knowingly." However, in its adopting release, the CFTC stated that, "[i]n any event, the Commission, for purposes of Regulation 1.59, intends to apply a scienter standard in evaluating whether SRO insiders or tippees disclosed or traded on the basis of material, non-public information." 58 Fed. Reg. 54,966, 54,969 n.11. The CFTC made it clear that it intended to apply an intentional or reckless standard in evaluating any violation of CFTC Regulation 1.59. *Id*.

### b. Byrnes' Experience Could Only Lead a Jury to Conclude He Acted Without Scienter

The CFTC's next argument regarding *scienter* is that,

> [a] factfinder could infer that Byrnes and Curtin appreciated that the information they were *repeatedly* disclosing (audio recordings of over 1,000 phone calls were produced in discovery (*see* Byrnes Mem. at 3)) at the request of a broker, was useful (as testified to by witnesses in different industry roles) to the broker's clients and potential clients (i.e., traders)."

(CFTC Opp'n Mem. at 23 (emphasis in original)).

12

First, the repetition of the disclosures has no bearing on whether Byrnes was aware of, or reckless with regard to, the usefulness of the information for trading purposes.[8] Indeed, Byrnes' willingness to provide the information for no material gain could just as easily indicate a lack of *scienter*. Second, as noted above, the "witnesses in different industry roles" never testified about whether the disclosures would be useful for trading purposes because they were never asked about the disclosures in question. No lay witness reviewed the disclosures that Byrnes made to Eibschutz and then determined that they would be useful for trading purposes. Keating, the only witness cited by the CFTC who listened to any of the phone calls, testified that he reviewed one call. The CFTC repeatedly attempted to get Keating to testify that the information disclosed on that call could disadvantage a trader, and Keating refused to agree.

### III. The Phrase "For Any Purpose Inconsistent with the Performance of Such Person's Official Duties." is Ambiguous

There is nothing frivolous about the position that a statute entitled "Insider Trading Prohibited" was intended to prevent the disclosure of information for the purpose of insider trading and should be interpreted as such. Contrary to the CFTC's assertion, Byrnes clearly identified the fact that the phrase "any purpose inconsistent" with an employee's official duties is ambiguous. (Byrnes Mem. at 15-20). As noted in Byrnes' moving papers, the ambiguous nature of the phrase is highlighted by the fact that the CFTC simultaneously argues that the disclosures were inconsistent with Byrnes' official duties, but within the scope of his employment. (*Id*. at 19).

---

[8] It is also, misleading to cite 1,000 phone calls when this motion is addressing roughly 60 disclosures.

According to the NYMEX Job Duties policy, Byrnes' duties as an employee were subject to change at any time and determined by his supervisors. (*See* Kokal Decl., Ex. 38, NYMEX Handbook Excerpts at 10). Under the CFTC's "plain reading" of the CEA Section 9(e)(1), if Byrnes' supervisor instructed him to provide material nonpublic information to Eibschutz, explicitly for the purpose of insider trading, it would not be a violation of the statute because it was consistent with Byrnes' "official duties." Obviously, such a result is absurd but highlights the ambiguity of what it means to make a disclosure that is inconsistent with an employee's official duties. The CFTC cannot make the text unambiguous simply by repeatedly declaring it as such.

Once it is established that the text is ambiguous, it is appropriate to look to statutory construction and, if necessary legislative history and intent to determine the meaning of a statute *CFTC v. Byrnes*, 58 F. Supp. 3d 319, 323-24 (S.D.N.Y. 2014). As discussed at length in Byrnes' moving papers, statutory construction and legislative history all indicate that the statute should be read to prohibit disclosures that are intended to be used for trading purposes. (Byrnes Mem. at 20-22).

The CFTC addresses only one of Byrnes' statutory construction arguments. Byrnes noted that the recipient of a tip is liable under CEA Section 9(e)(2) only if he or she trades on the information and as such it was illogical to read CEA Section 9(e)(1) in such a way as to prohibit disclosures not meant for trading. The CFTC responds that it is possible Congress intended to treat SRO employee tippers differently than the individuals who receive the tip because the tippees are "private citizens" and "passive recipients." (CFTC Opp'n Mem. at 4-6). It should first be noted that SRO employees are also "private citizens." Second, the CFTC's so called

14

"passive recipient" is an individual who is trading on inside information so there is no logical reason to hold the SRO tipper to a higher standard than the tippee.  Putting that aside, there is no indication that Congress sought to hold SRO employees to a different standard of tipper liability than tippers under the securities laws.  Quite the opposite, it is clear that Congress and the CFTC were being guided by the securities laws when crafting the statute and the regulation. (Byrnes Mem. at 21-22).

## **CONCLUSION**

In sum, the CFTC cannot establish a violation of CEA Section 9(e)(1) or CFTC Regulation 1.59(d).  Byrnes plainly lacked *scienter*, as the evidence shows his sole intent was to help a friend generate business leads.  Nor was the disclosed information material.  Isolated details of past trades are simply not useful to anyone in making a trading decision regarding a commodity interest.  Plaintiff's case presents an unsuccessful attempt to stretch insider trading law to reach conduct that merely violated internal policy.  Accordingly, Byrnes' summary judgment motion should be granted, and the CFTC's summary judgment motion should be denied.

Dated: New York, New York  
      April 20, 2017

Respectfully submitted,

HERSKOVITS PLLC

By: _____  
Robert L. Herskovits (RH-2586)  
Joseph P. Allgor (JA-0798)  
5 Bryant Park, 27th Floor  
New York, New York 10018  
(212) 897-5410  
*Attorneys for Defendant William Byrnes*

## **CERTIFICATE OF SERVICE**

On April 20, 2017 the foregoing reply memorandum of law was delivered to counsel of record for each party by electronic means via the Court's ECF system.

_____
ROBERT L. HERSKOVITS