**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
U. S. COMMODITY FUTURES                              :
TRADING COMMISSION,                                  :
                                         :   Case No. 13-cv-1174 (VSB)
                    Plaintiff,       :
                                         :   ECF Case
          v.                                     :
                                         :   Electronically Filed
WILLIAM BYRNES, et al.,                              :
                                         :
                    Defendants.     :
-------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF NEW YORK**
**MERCANTILE EXCHANGE, INC.'S MOTION FOR SUMMARY JUDGMENT**

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Patrick Fitzgerald
Albert L. Hogan III
Marcella Lape
155 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
Email: patrick.fitzgerald@skadden.com
Email: albert.hogan@skadden.com
Email: marcella.lape@skadden.com

*Counsel for Defendant New York Mercantile*
*Exchange, Inc.*

# TABLE OF CONTENTS

Page

I.  NYMEX is Entitled to Summary Judgment on Count II. ....................................................3

   A.  The Scope of Employment Test Requires a Determination of Whether the
       Employees Had the Subjective Intent to Serve the Employer's Interests...............3

   B.  The Undisputed Evidence Demonstrates that Byrnes and Curtin Did Not
       Act Within the Scope of Employment ...................................................................5

II. NYMEX is Entitled to Summary Judgment on the Request for Injunctive Relief. ...........12

   A.  NYMEX's Motion is Not Premature ....................................................................12

   B.  An Award of Injunctive Relief Would be Improper and Unprecedented .............13

   C.  The CFTC Cannot Demonstrate a Reasonable Likelihood of Future
       Disclosures of Confidential Information. ............................................................15

**CASES**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................10

*Council on American Islamic Relations v. Ballenger*,
  444 F.3d 659 (D.C. Cir. 2006) ...............................................................................4

*Energy Factors Inc. v. Nuevo Energy Co.*,
  No. 91 CIV. 4273 (RLC), 1992 WL 170683 (S.D.N.Y. July 7, 1992) ...............7

*Gallose v. Long Island Railroad Co.*,
  878 F.2d 80 (2d Cir. 1989)......................................................................................7

*Gibbs v. City of New York*,
  714 F. Supp. 2d 419 (E.D.N.Y. 2010) .................................................................4, 5

*Higazy v. Millennium Hotel & Resorts*,
  346 F. Supp. 2d 430 (S.D.N.Y. 2004)...............................................5, 7, 10, 11

*N.L.R.B. v. Express Public Co.*,
  312 U.S. 426 (1941)................................................................................................14

*Rosenthal & Co. v. CFTC*,
  802 F.2d 963 (7th Cir. 1986) .............................................................................6, 7

*SEC v. Bausch & Lomb, Inc.*,
  565 F.2d 8 (2d Cir. 1977)......................................................................................17

*SEC v. Commonwealth Chemical Securities, Inc.*,
  574 F.2d 90 (2d Cir. 1978)....................................................................................15

*SEC v. First Jersey Securities, Inc.*,
  101 F.3d 1450 (2d Cir. 1996)................................................................................17

*SEC v. Manor Nursing Centers, Inc.*,
  458 F.2d 1082 (2d Cir. 1972)................................................................................15

*Stevens v. Kellar*,
    977 N.Y.S.2d 461 (App. Div. 2013) ..................................................................................5

*United States v. Jacques Dessange, Inc.*,
    103 F. Supp. 2d 701 (S.D.N.Y. 2000)..............................................................................11

*United States v. St. Regis Paper Co*.,
    106 F. Supp. 286 (S.D.N.Y. 1952) ..................................................................................14

## RULES

Federal Rule of Evidence 602 ..........................................................................................................9

## INTRODUCTION

In its Opening Memorandum, NYMEX[1] demonstrated that the undisputed facts show that neither Byrnes nor Curtin had any intent to benefit or further NYMEX's interests when they made improper disclosures of trade information to Eibschutz. As a result, there is no basis to conclude that Byrnes and Curtin acted within the scope of their employment, and the CFTC cannot hold NYMEX vicariously liable for their alleged violations of the CEA. NYMEX also demonstrated that, regardless of whether the CFTC's vicarious liability claim under Section 2(a)(1)(B) can survive NYMEX's motion for summary judgment, the Court should nonetheless grant summary judgment as to the CFTC's request for injunctive relief. Not only is an injunction based on a no-fault vicarious liability charge for the actions of two lower-level employees who left NYMEX more than six years ago nonsensical and unprecedented, but there is no evidence to show a reasonable likelihood that violations of the insider trading prohibitions of the CEA will occur in the future absent an injunction.

The CFTC's Opposition does not change any of this. The CFTC fails to come forward with any facts that create a disputed issue as to Byrnes's and Curtin's intent in disclosing trade information. Instead, the CFTC attempts to avoid summary judgment in NYMEX's favor on its Section 2(a)(1)(B) claim by arguing that NYMEX is ignoring the proper standard for the scope

---

[1] Capitalized terms used herein shall have the same meanings as ascribed thereto in the Opening Memorandum of Defendant NYMEX in Support of its Motion for Summary Judgment ("Op. Mem.") (ECF No. 132). "NYMEX 56.1" refers to NYMEX's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (ECF No. 133). "NYMEX Hogan Decl." refers to the Declaration of Albert L. Hogan III and exhibits attached thereto, submitted in connection with NYMEX's Motion for Summary Judgment (ECF No. 137). "CFTC 56.1" and "CFTC Ex." refer to the CFTC's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (ECF No. 149) and the exhibits attached to the Declaration of Trevor Kokal (ECF No. 153) and Supplemental Declaration of Trevor Kokal (ECF No. 181), respectively. "CFTC Opp." refers to the CFTC's Memorandum of Law in Opposition to NYMEX's Motion for Summary Judgment (ECF No. 168). "NYMEX Opp." refers to NYMEX's Memorandum of Law in Opposition to the CFTC's Motion for Summary Judgment (ECF No. 175). "NYMEX Statement of Add'l Facts" refers to NYMEX's Statement of Additional Undisputed Facts, submitted in connection with its Opposition to the CFTC's Motion for Summary Judgment (ECF No. 173).

of employment test by focusing on Byrnes's and Curtin's subjective intent. The CFTC argues that under the allegedly proper "objective" test, there is at least a question of material fact as to whether Byrnes and Curtin acted for NYMEX and with the intent to benefit or serve NYMEX's interests when disclosing confidential trade information. But the CFTC has it wrong. The law is clear that the scope of employment test is focused on assessing the employees' own intent, and in this case, Byrnes's and Curtin's repeated testimony and admissions regarding their intent is compelling, undisputed direct evidence that cannot be ignored. Further, as NYMEX demonstrated in its Opening Memorandum, and in its Opposition to the CFTC's Motion for Summary Judgment, NYMEX did not ignore other available evidence. Rather, that evidence supports what Byrnes and Curtin testified to and admitted: they did not intend to benefit or serve any purpose of NYMEX in disclosing trade information to Eibschutz.

The CFTC further contends that NYMEX's motion with respect to the CFTC's request for injunctive relief is "premature" and that evidence in the record demonstrates that an injunction is appropriate here because there is a reasonable likelihood that disclosures will continue unless NYMEX is enjoined. The CFTC, however, fails to point to a single case to support its argument that a ruling on its request for injunctive relief is premature, nor does it point to a single case in which any court has ever awarded injunctive relief against an entity on a no-fault vicarious liability basis where the entity itself could not be found independently liable for the underlying violation.

Further, the only admissible evidence that the CFTC identifies to support its request for injunctive relief is stale and pertains to events that happened nearly a decade ago. That evidence can hardly support a finding that CEA violations are reasonably likely to occur in 2017. Most important, the two low-level employees whose violations of NYMEX policy led to this vicarious

2

liability charge no longer work for NYMEX and have not worked there for more than six years. Since the day William Byrnes was fired in 2010, there is no evidence that any NYMEX employee has intentionally disclosed confidential trade information. Neither the law nor the facts of this case justify invoking this Court's injunctive power.

Finally, the CFTC's suggestion that NYMEX has not taken this litigation seriously is an unfortunate, but inaccurate slur. The CFTC is well aware of the limitations NYMEX had in searching for responsive call recordings, and its staff even took a Rule 30(b)(6) deposition of an in-house attorney at NYMEX to examine the process by which NYMEX searched and produced recorded calls. If the CFTC had a concern with the approach or believed that NYMEX was side-stepping its discovery obligations, the time to raise it was during discovery, not as a last-ditch effort to avoid summary judgment on its claim for injunctive relief.

Accordingly, for the foregoing reasons and those that follow, as well as the reasons contained in NYMEX's Opening Memorandum (ECF No. 132) and in its Opposition to the CFTC's Motion for Summary Judgment (ECF No. 175), this Court should grant summary judgment on Count II in NYMEX's favor, or, at a minimum, grant summary judgment as to the CFTC's request for injunctive relief.

## ARGUMENT

### I.    NYMEX is Entitled to Summary Judgment on Count II.

#### A.    The Scope of Employment Test Requires a Determination of Whether the Employees Had the Subjective Intent to Serve the Employer's Interests.

In its Opening Memorandum, NYMEX demonstrated that the testimony and admissions of Byrnes and Curtin conclusively show that they did not act with an intent to benefit or serve any purpose of NYMEX when they disclosed confidential trade information to Eibschutz. The CFTC failed to rebut this evidence in its Opposition Brief. Rather, the CFTC argued that the

Court should ignore Byrnes's and Curtin's testimony and admissions regarding their own intent, and should instead apply a purely "objective" test that supposedly looks to the "totality of the circumstances." Yet there is a transparent flaw in the CFTC's argument: not only does the test for scope of employment necessarily require an examination of subjective intent, but the Court cannot view the totality of the circumstances while at the same time ignoring direct evidence from Byrnes and Curtin regarding that intent.

The Court has correctly stated that "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct *not intended by the employee to serve any purpose of the employer.*" (ECF No. 57 at 13 (quoting Restatement (Third) of Agency § 7.07(2)) (emphasis added).) Thus, it is the employee's own intent and personal motivations that drive the scope of employment inquiry. NYMEX does not dispute, and in fact agrees, that an employee's intent should be analyzed based on the totality of the circumstances. But the totality of the circumstances necessarily includes both available direct evidence—in the form of testimony or admissions from the employee himself—and other circumstantial evidence from which the employee's intent may be inferred. Indeed, the case law cited by the CFTC recognizes the importance of direct evidence of intent. In *Council on American Islamic Relations v. Ballenger*, 444 F.3d 659, 663-65 (D.C. Cir. 2006), for example, the court looked to an employee's own testimony regarding the reasons for his tortious conduct in determining that the employee was motivated, at least in part, by a desire to fulfill his job responsibilities. Further, in *Gibbs v. City of New York*, 714 F. Supp. 2d 419, 422 (E.D.N.Y. 2010), the court recognized that "absent direct proof of an expressed intent to serve his own interest and not his master's, it falls to the Court or to the jury to divine the state of the servant's mind at the relevant time." The court further noted that where direct evidence of intent is

4

unavailable, it "may be inferred from the surrounding facts and circumstances and from the servant's conduct." *Id*.[2] Accordingly, the Court should look to *all* available evidence in assessing whether Byrnes and Curtin acted within the scope of employment when they disclosed confidential information to Eibschutz. The CFTC's effort to cherry-pick the evidence it wants the Court to rely upon, and in particular, its invitation to ignore the best evidence of the employees' intent, must be rejected.[3]

### B.    The Undisputed Evidence Demonstrates that Byrnes and Curtin Did Not Act Within the Scope of Employment.

The CFTC suggests that even if the Court were to consider the direct evidence in this case—what Byrnes and Curtin actually said about why they made the disclosures—the "totality of the circumstances" nonetheless would somehow show that "Byrnes and Curtin were motivated, at least in part, to serve a purpose or confer a benefit on NYMEX." (CFTC Opp. at 5.) At a minimum, according to the CFTC, the evidence prevents summary disposition in NYMEX's favor. But the undisputed facts show otherwise. Both Byrnes and Curtin expressly admitted that when they disclosed confidential trade information to Eibschutz, "it was not for the purpose of conferring a benefit on NYMEX." (NYMEX Hogan Decl., Exs. 38, 39.) And Byrnes further

---

[2]    Other courts in New York and the Second Circuit have recognized the same. *See, e.g., Higazy v. Millennium Hotel & Resorts*, 346 F. Supp. 2d 430, 453-54 (S.D.N.Y. 2004), *aff'd in part, rev'd in part on other grounds*, 505 F.3d 161 (2d Cir. 2007) (granting summary judgment in favor of employer on vicarious liability claim where employee testified that his tortious acts were undertaken for a reason that the court found was "a personal matter and not one that can be understood as redounding to or furthering the interests of his employer"); *Stevens v. Kellar*, 977 N.Y.S. 2d 461, 463 (App. Div. 2013) (holding that town was not vicariously liable for police officer's tortious conduct at a pub where, "by his own admission, [officer] was not on duty when he went to the pub," and, "when pressed as to his reasons for confronting plaintiff, [officer] acknowledged that he only wanted 'to see what [plaintiff's] side of . . . the story was' and admitted that he was not there to 'officially' investigate"; finding "[s]uch proof . . . more than sufficient to discharge the Town's initial burden on its motion for summary judgment).

[3]    Indeed, it is telling that the CFTC has not cited, and NYMEX is not aware of, a single case in which there was direct testimony from the employee himself regarding his own intent, and yet the court found that other circumstantial evidence outweighed the employee's direct testimony for purposes of the scope of employment inquiry.

admitted that his intent was not to generate business or revenue for NYMEX, but to "assist[] Eibschutz in building his book of business." (CFTC 56.1 ¶ 186; NYMEX Hogan Decl., Ex. 38 at 2.)

While the CFTC would like the Court to ignore what it calls these "carefully crafted admissions," as the CFTC itself points out, Byrnes and Curtin provided these admissions after both had given "extensive sworn testimony" regarding the intent and motives behind their disclosures. (CFTC Opp. at 5.) And all of that testimony supports these admissions: Byrnes repeatedly testified that he knew his disclosures violated NYMEX policies and that he "could be fired" for them, but he nonetheless provided the information that Eibschutz requested so that he could "help out [his] friend" who was looking to obtain cold-call leads for the brokerage business that he planned to launch someday. (NYMEX 56.1 ¶¶ 37, 43.) Curtin similarly testified that he knew his disclosures were against NYMEX policy and "put the Exchange and [his] co-workers in a bad position." (*Id.* ¶¶ 40-41, 46.) Although Curtin did not articulate a particular reason why he disclosed confidential information to Eibschutz, he indicated that it was probably "a little bit of . . . laziness on [his] part" or a feeling that he was "above it all" and could do "what [he] wanted." (*Id.* ¶ 44.) In other words, whatever Curtin's intentions were, they were *not* to further NYMEX's business or interests.

The CFTC further attempts to downplay the significance of Byrnes's and Curtin's admissions by claiming that they admitted only that they did not act to confer a benefit on NYMEX, but did not admit that they lacked an intent to serve "any purpose" of NYMEX. (*See* CFTC Opp. at 6-7.) But this is a distinction without a difference. The case the CFTC cites for their "any purpose" theory—*Rosenthal & Co. v. CFTC*, 802 F.2d 963 (7th Cir. 1986)—does not stand for the proposition that the CFTC suggests. Instead, in *Rosenthal*, the Court determined

that a plaintiff need not show that an employee *actually succeeded* in conferring a benefit on the employer in order to establish liability under Section 2(a)(1)(B) of the CEA, only that the employee acted in furtherance of the employer's business. This is because the theory behind Section 2(a)(1)(B) liability is one of "respondeat superior, not unjust enrichment." *Rosenthal*, 802 F.2d at 969. But the *Rosenthal* Court said nothing about a difference between an "intent to benefit" and an "intent to serve any purpose or interest of the employer," and these terms are consistently used interchangeably by courts. *See, e.g., Energy Factors Inc. v. Nuevo Energy Co*., No. 91 CIV. 4273 (RLC), 1992 WL 170683, at *6 (S.D.N.Y. July 7, 1992) (to establish that employer is vicariously liable for employee's tipping of inside information, "it is plaintiff's burden to allege in its complaint sufficient facts from which it may be inferred that the alleged tipper . . . intended to benefit the employer as well as himself"); *Higazy*, 346 F. Supp. at 453 ("[A]n employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest."); *Gallose v. Long Island R.R. Co*., 878 F.2d 80, 83 (2d Cir. 1989) ("[N]o [vicarious] liability attaches when an employee acts entirely upon his own impulse . . . and for no purpose of or benefit to the defendant employer.") (citation omitted)).

The CFTC next argues that even if the Court considers Byrnes's and Curtin's admissions and undisputed testimony, it should nonetheless determine that there are genuine issues of material fact that preclude summary judgment. As to Byrnes, the CFTC contends that his repeated testimony and admissions regarding his desire to "help out a friend" do not "negate other business-related purposes behind [his] disclosures." (CFTC Opp. at 6.) The CFTC further argues that Byrnes testified to a "business-related purpose" at his unemployment hearing, when he stated that "I was not aware that I couldn't give out all that private information. I was told I

7

can . . . I was supposed to help the customers and the brokers with questions that they had." (*Id*.)

Taken as a whole, however, Byrnes's unemployment hearing testimony does not help the CFTC. In context, Byrnes said little more than the fact that his job was to help customers and brokers and that he was supposed to provide them with information, including "private" information related to their own trades. But Byrnes's general description of his job does nothing to counteract his repeated testimony throughout this case that, as to the specific disclosures of confidential trade information forming the basis of the CFTC's liability theory, Byrnes *always* knew that he was not supposed to disclose *that* information to people who were not parties to the trade. Byrnes expressly acknowledged, time after time, that he was not authorized to disclose trade information to customers or brokers who had not participated in the trade, even if doing so would "help" the customer or broker by providing him information to which he otherwise did not have access. (NYMEX 56.1 ¶¶ 23-30, 38-39.)[4]

> Q: Coming back to the disclosures that you made to Ron Eibschutz during your tenure at NYMEX, did you have an understanding that Ron Eibschutz was asking you for information about trades that he was not a party to?
>
> A: Yes.
>
> Q: So you knew you were not supposed to give him the information, right?
>
> A: Yes.[5]

---

[4]   The CFTC similarly misrepresents testimony in which Byrnes "recounted that his training included being told 'answer the phones, answer their questions.'" (CFTC Opp. at 7.) The CFTC strategically omits the latter portion of Byrnes's explanation, in which he clarified that he was told to help callers by "put[ting] their trades in when they give you trades," and "do[ing] the corrections when they have corrections . . . to be done." (CFTC Ex. 34 (5/17/11 Unemployment Hr'g Tr.) at 48:4-8.) Byrnes thereby acknowledged that he was authorized to help customers only to the extent that the customer was involved in the trade about which he was calling.

[5]   To the extent Byrnes, when seeking unemployment benefits, was hoping that his general description of his job as "helping customers and providing information" might confuse one into thinking his conduct was consistent with NYMEX's policy, it did not work. After a contested hearing on Byrnes's application for unemployment benefits, an Administrative Law Judge for the New York State Unemployment Insurance Appeal Board issued an opinion denying Byrnes unemployment benefits based on his finding that Byrnes had signed an acknowledgement of receipt of NYMEX's policy requiring employees to protect the confidentiality of customer

*(cont'd)*

(CFTC 56.1 ¶¶ 75-76 (citing CFTC Ex. 14 (Byrnes 11/23/15 Dep.) at 72:24-73:10).)
Accordingly, Byrnes's stray testimony at his unemployment hearing is not enough to create a
disputed issue of fact related to his intent. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
252 (1986) (when considering a motion for summary judgment, "[t]he mere existence of a
scintilla of evidence in support of the plaintiff's position will be insufficient; there must be
evidence on which the jury could reasonably find for the plaintiff.").

       As to Curtin, the CFTC contends that his testimony about his *own* motives and intentions
"is speculative and inadmissible and therefore should be disregarded." (CFTC Opp. at 7.) The
CFTC also argues that the fact that Curtin did not articulate why he made the disclosures to
Eibschutz "forecloses any possibility of NYMEX establishing that Curtin subjectively believed
that he made the illegal disclosures to Eibschutz 'within an independent course of conduct not
intended by the employee to serve any purpose of the employer.'" (*Id.*) Finally, the CFTC argues
that statements that Curtin made in a 2007 employee evaluation—before the disclosures even
took place—somehow creates a material issue of disputed fact as to intent. None of these
arguments has merit.

       As an initial matter, first-hand testimony about one's own past or present mental state is
not "speculative," nor is it inadmissible. Under Federal Rule of Evidence 602, a witness is
competent to testify about a matter so long as "evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

       In addition, the CFTC creates a logical fallacy by arguing that because Curtin could not

---

*(cont'd from previous page)*

    information, including trading activity, and that Byrnes had violated that policy by repeatedly providing
    Eibschutz with confidential customer trading activity. The ALJ ultimately determined that Byrnes lost his job
    due to misconduct and was not entitled to unemployment benefits. (NYMEX Statement of Add'l Facts ¶ 13;
    CFTC Ex. 35.) Thus, the punch line to the CFTC's evidence is actually that Byrnes's disclosures were found to
    be *inconsistent* with NYMEX's interests.

articulate a specific reason behind his disclosures of confidential information, that also means that he cannot disclaim any reasons for his conduct. It is not unusual for a person to be unable to explain the reasons or purpose behind a particular act, but know, for example, that he did not commit the act because someone told him to or because he was trying to help someone else. Here, although Curtin "do[es]n't know why" he disclosed confidential information to Eibschutz, he knows, and admitted, that it was *not* to further NYMEX's interests. This is supported by the undisputed record: Curtin repeatedly testified that he knew his disclosures violated NYMEX policies and "put the Exchange and [his] co-workers in a bad position." (NYMEX 56.1 ¶¶ 40, 46.)[6]

Finally, the self-evaluation that Curtin completed in 2007 does not, as the CFTC argues, create a genuine issue of material fact with regard to Curtin's intent. The CFTC contends that, because Curtin stated that one of his goals was to "continue to grow facilitation desk knowledge base and increase the business," that proves that, "as a general matter, Curtin was profit-driven and business focused with respect to his conduct at work." (CFTC Opp. at 8.) But these highly generalized statements about how Curtin viewed his job, writ large, do not at all indicate that Curtin improperly disclosed information years later so that he could increase NYMEX's business.[7] How the CFTC believes the former says anything about the latter is a mystery.

---

[6]   The CFTC's arguments regarding Curtin's testimony also misstate the burden of proof in this case. It is the CFTC, not NYMEX, who bears the burden of proof in the intent element of its vicarious liability claim. To obtain summary judgment, NYMEX need only show that the CFTC has failed to adduce sufficient evidence to satisfy that burden. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (mandating entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Higazy*, 346 F. Supp. 2d at 454 ("In the absence of any evidence suggesting how [employee]'s actions served his employer's interests, it is appropriate to enter summary judgment in the Employer['s] favor on [plaintiff's] vicarious liability claim."). If the CFTC fails to present sufficient evidence to prove that Byrnes and Curtin intended to benefit or serve any purpose of NYMEX, then NYMEX is entitled to summary judgment whether or not it affirmatively establishes an alternative intent.

[7]   It is highly unlikely that Curtin's disclosures to Eibschutz could actually generate further business for NYMEX
*(cont'd)*

Byrnes's and Curtin's direct testimony and admissions demonstrate that Byrnes and Curtin lacked any intent to further NYMEX's interests through their disclosures to Eibschutz. Moreover, this direct evidence is supported by other "objective facts," including that NYMEX had express policies and procedures in place prohibiting the very conduct at issue (NYMEX 56.1 ¶¶ 13, 20-26), and that their conduct hurt, rather than benefitted, the Exchange (*id.* ¶¶ 16-19). *See, e.g., United States v. Jacques Dessange, Inc.*, 103 F. Supp. 2d 701, 705 (S.D.N.Y. 2000) (it is appropriate to "consider the fact that the individual disobeyed instructions or violated company policy . . . in determining whether the individual intended to benefit the corporation or was acting within the scope of his employment").[8] The CFTC's failure to set forth any facts that could show that Byrnes and Curtin acted with an intent to benefit or further NYMEX's interests is fatal to its claim.

### C.   The Time and Place of Byrnes's and Curtin's Disclosures Cannot Salvage the CFTC's Claim.

As a final matter, the CFTC argues that it can avoid summary judgment because Byrnes and Curtin disclosed the confidential trade information while seated at their work desks, during working hours, and while talking on the phone to a "customer." (CFTC Opp. at 9.) But in making this argument, the CFTC ignores that when the evidence indisputably shows that an employee does not have any intent to benefit or serve a purpose of the employer, as it does here, the time and location of the employee's act is inconsequential. As this Court has recognized,

---

*(cont'd from previous page)*

and there is not a single fact in evidence to suggest that it did. If disclosures of trade information could have increased NYMEX's business, it would make little sense for Curtin to have made them to only a single broker, as opposed to the hundreds of other brokers who traded with NYMEX.

[8]   NYMEX does not argue, as the CFTC suggests, that the existence of policies is dispositive *per se*. But when assessing Byrnes's and Curtin's intent, the fact that NYMEX policies precluded these disclosures, combined with the direct evidence from Byrnes and Curtin that they *understood* the disclosures were prohibited and could get them fired, is more than sufficient to support summary judgment in NYMEX's favor.

"[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct *not intended by the employee to serve any purpose of the employer.*" (ECF No. 57 at 13 (quoting Restatement (Third) of Agency § 7.07(2)) (emphasis added)).) Without the requisite intent, the fact that the wrongful conduct took place on company premises or during working hours just does not matter. *See, e.g., Higazy,* 346 F. Supp. 2d at 454 (entering summary judgment in favor of employer on vicarious liability claim, noting that the fact that employee "chose to commit a tort *in the course of*" conducting work activities "does not mean the tort was committed *in furtherance of*" those activities (emphases in original)); *see also* NYMEX Opp. at 28-32 (arguing that the CFTC cannot demonstrate that Byrnes's and Curtin's disclosures were within the range of duties that NYMEX employed them to perform or that Byrnes's and Curtin's misconduct was "subject to NYMEX's control"). Accordingly, NYMEX is entitled to summary judgment on Count II of the Complaint.

## II. NYMEX is Entitled to Summary Judgment on the Request for Injunctive Relief.

Even if the Court finds that a disputed issue of material fact exists that precludes it from granting summary judgment on the CFTC's vicarious liability claim, it should nonetheless decide as a matter of law that the CFTC cannot obtain injunctive relief against NYMEX. Contrary to the CFTC's arguments, granting injunctive relief in this case, on the basis of a no-fault vicarious liability charge, would be an unprecedented and inapt use of this Court's injunctive power. This is especially true because the CFTC has failed to introduce any evidence to suggest that there is a real risk that violations of the CEA will continue absent injunctive relief.

### A. NYMEX's Motion is Not Premature

The CFTC argues that it would be premature for the Court to preclude injunctive relief at this stage because the CFTC has not yet had an opportunity to prove the full extent of Byrnes's

and Curtin's violations. According to the CFTC, it is therefore "too soon to make a determination on the likelihood of future violations." (CFTC Opp. at 10.) The CFTC fails, however, to point to a single case to support its argument that a ruling on NYMEX's motion is premature, nor can it. There is nothing that would prevent the Court from deciding today, as a matter of law, whether the type of relief requested in this case—an injunction based on a charge of no-fault vicarious liability for an offense that NYMEX itself cannot commit—is an appropriate exercise of the Court's power to grant discretionary relief.

Moreover, even assuming such an injunction were available, because the charge against NYMEX is based on vicarious liability, it does not matter if the CFTC ultimately can prove that Byrnes and Curtin committed one violation or 100 violations. The extent and frequency of these ex-employees' acts—all of which occurred between 2008 and 2010 and violated NYMEX policy—would have no bearing on the likelihood of future "violations" by NYMEX. The facts related to the likelihood of future violations are not in dispute. Those facts conclusively show that there is little, if any, risk of further disclosures of confidential trade information. As set forth in NYMEX's Opening Memorandum, in such a case, a request for summary judgment is ripe for review and should be granted. (*See* Op. Mem. at 14-15; *see also* Section II.C *infra*.)

**B.     An Award of Injunctive Relief Would be Improper and Unprecedented**

In its Opening Memorandum, NYMEX pointed out the unprecedented and nonsensical nature of the CFTC's request for injunctive relief, explaining that such a request makes no sense where NYMEX itself cannot be held directly liable for the underlying violations of the CEA's Insider Trading Prohibitions, but only through a no-fault, vicarious liability charge. (Op. Mem. at 15-17.) Nonetheless, the CFTC failed to come forward with any support for its argument that injunctive relief in this case would be appropriate. Instead, the CFTC issued a blanket statement that the "[p]ursuit of injunctive relief against a corporate defendant whose employees and agents

have violated the Act is far from novel." (CFTC Opp. at 10.) Yet while this may be true as a general matter, neither NYMEX nor the CFTC has been able to locate a single case in which any court has issued an injunction against a vicariously liable entity where the entity itself could not be held directly liable for the underlying violation. The CFTC's request is indeed novel.

The fact that the CEA imputes employees' acts to their employer does not alter this dynamic. The purpose of an injunction is to prevent future acts "which are of the same type as [the] unlawful acts" with which the enjoined party has been charged. *United States v. St. Regis Paper Co.*, 106 F. Supp. 286, 290 (S.D.N.Y. 1952) (quoting *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435 (1941)). Injunctions draw their deterrent power from the threat of contempt that backs them—if the enjoined party commits the same unlawful acts in the future, it may be subject to sanctions. Here, NYMEX has not, and could not have, been charged with committing any unlawful acts itself. It would make no sense, and would be fundamentally unfair, to subject NYMEX to the threat of a contempt sanction as a means of deterring unlawful acts for which it could not have been independently charged.

The CFTC accuses NYMEX of raising an "overblown concern" that NYMEX could face a contempt sanction if the Court issues an injunction and a future employee engages in intentional misconduct. The CFTC notes that a contempt finding can only be issued if a party "has not diligently attempted to comply [with the court order] in a reasonable manner" and argues that as long as NYMEX is "diligent and energetic" in avoiding future violations by its employees, it will not be subject to a risk of contempt. (CFTC Opp. at 11.) This argument further exposes why injunctive relief is inappropriate under the circumstances of this case: it reveals that the CFTC's goal is not, as it is supposed to be, to prevent NYMEX from committing future violations of the CEA, but instead to obtain an affirmative injunction requiring that NYMEX

"diligently and energetically" maintain and monitor policies and procedures that prevent employees from disclosing confidential information.

The CFTC does not provide any case law to suggest that the Court has the authority to issue this type of injunction, nor could it. Indeed, issuance of such an injunction would result in a decree that is uncertain and ambiguous as it would provide NYMEX with zero guidance on what the Court or even the CFTC believes would satisfy NYMEX's obligations. It would also create a new supervisory standard that finds no support in the CEA or in the CFTC's regulations. Accordingly, the Court should find, as a matter of law, that injunctive relief is not appropriate in this case.

### C.   The CFTC Cannot Demonstrate a Reasonable Likelihood of Future Disclosures of Confidential Information.

 Even if injunctive relief were appropriate to impose against a no-fault vicarious liability defendant, the CFTC would not be entitled to injunctive relief against NYMEX in this case: there is no evidence to even remotely suggest that further improper disclosures will occur absent an injunction. In its Opposition, the CFTC cites a number of factors that it believes should be considered in deciding whether there is a reasonable likelihood that the party against whom an injunction is sought will repeat the wrongs with which it is charged: (1) "whether the wrongful conduct ceased prior to the commencement of the investigation," (2) "whether the misconduct was willful, blatant, or 'completely outrageous,'" (3) "whether the defendants have taken responsibility for the misconduct," (4) "the sincerity of the defendant's assurances that they would not again violate the law," and (5) "whether [the] defendant might be in a position where future violations could be anticipated." (CFTC Opp. at 12-13 (citing *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) and *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978)).)

Notably, however, the CFTC fails to actually examine any of these factors vis-a-vis NYMEX. This is because none weigh in favor of awarding injunctive relief:

*First*, the undisputed evidence shows that NYMEX voluntarily self-reported Byrnes's and Curtin's misconduct to the CFTC after it learned of the misconduct and terminated Byrnes's employment. Therefore, the conduct at issue had ceased prior to any investigation or litigation by the CFTC. (NYMEX 56.1 ¶ 62.)

*Second*, there is no evidence that NYMEX's conduct was "willful," "blatant," or in any way "outrageous." In fact, NYMEX's conduct is not even at issue in this case: the claim against NYMEX under Section 2(a)(1)(B) is based purely on alleged vicarious liability, which does not take NYMEX's conduct into account at all.

*Third*, the undisputed evidence shows that NYMEX took responsibility for Byrnes's and Curtin's misconduct by voluntarily reporting it to the CFTC as soon as the Exchange learned of the disclosures. (NYMEX 56.1 ¶¶ 56-60; NYMEX Hogan Decl. ¶ 3.)

*Fourth*, although NYMEX itself cannot issue absolute assurance that a rogue employee will never in the future violate NYMEX policies and disclose confidential information, in the years since Byrnes's termination, and in the wake of NYMEX's merger with CMEG, NYMEX and CMEG have substantially altered their clearing operations, policies, and procedures in a way that makes disclosures of the type at issue in this case unlikely to recur. (*See* Op. Mem. at 20.)

And *finally*, NYMEX's status as an exchange and a self-regulatory organization does not, as the CFTC argues, automatically put NYMEX "in a position where future violations of Section 9(e)(1) and Regulation 1.59(d) by NYMEX employees can be anticipated." (CFTC Opp. at 14.) NYMEX expects that its employees will comply with its policies and procedures related to confidential information and has systems in place to monitor that compliance. Further, the fact

that discovery in this case did not reveal a single intentional disclosure of confidential information after Byrnes's termination in 2010 shows that the CFTC's argument is meritless. (NYMEX 56.1 ¶ 67.)

Perhaps recognizing that the factors do not support a grant of injunctive relief, the CFTC cites a number of additional, unrelated facts that it contends show evidence of NYMEX's alleged "lax and inadequate management and controls [that] present[s] an ongoing concern" and a likelihood of future violations. (CFTC Opp. at 13.) But with the exception of a disingenuous complaint regarding NYMEX's production of calls during discovery in this action,[9] each and every complaint that the CFTC lodges relates to the 2008–2011 time period. The CFTC cannot show "positive proof of a reasonable likelihood that past wrongdoing will recur" by relying nearly wholesale on conduct that occurred more than six years ago. *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2d Cir. 1977); *accord SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1477 (2d Cir. 1996). Despite investigating and conducting discovery in this case for years, the CFTC has no evidence of any intentional disclosures since the day that Byrnes was terminated, and NYMEX is not aware of any such disclosures. (NYMEX 56.1 ¶ 67.) There is no evidence to create a disputed issue of fact regarding the likelihood of future disclosures of confidential information at CMEG. The undisputed evidence demonstrates that such disclosures are unlikely. The CFTC's request for a window-dressing injunction should stop here.

## CONCLUSION

For the foregoing reasons and those set forth in NYMEX's Opening Memorandum and in

---

[9]   The CFTC argues that an issue related to NYMEX's production of calls during discovery somehow calls into question NYMEX's present representation that illegal disclosures are unlikely to continue. There is no logical connection to this argument. Even if there were, however, if the CFTC had any true concerns regarding NYMEX's compliance with its discovery obligations, it should have raised that issue with the Court during discovery. The Court should see this argument for what it is: a weak attempt by the CFTC to avoid summary judgment on its request for injunctive relief.

its Opposition to the CFTC's Motion for Summary Judgment, NYMEX respectfully requests that

the Court grant its motion for summary judgment and enter judgment in NYMEX's favor on

Count II, or, at a minimum enter summary disposition on the CFTC's request for injunctive

relief.

Dated:  April 20, 2017

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

*/s/ Albert L. Hogan III*
Patrick Fitzgerald
Albert L. Hogan III
Marcella Lape
155 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
Email: patrick.fitzgerald@skadden.com
Email: albert.hogan@skadden.com
Email: marcella.lape@skadden.com

*Counsel for Defendant New York Mercantile
Exchange, Inc.*