UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
U. S. COMMODITY FUTURES  :
TRADING COMMISSION,  :
                                            :  Case No. 13-cv-1174 (VSB)
                Plaintiff, :
                                           : ECF Case
       v. :
                                             : Electronically Filed
WILLIAM BYRNES, et al., :
                                             :
               Defendants. :
---------------------------------------------------------- x

## NEW YORK MERCANTILE EXCHANGE, INC.'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS PURSUANT TO RULE 56.1(b)

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Patrick Fitzgerald
Albert L. Hogan III
Marcella Lape
155 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
Email: patrick.fitzgerald@skadden.com
Email: albert.hogan@skadden.com
Email: marcella.lape@skadden.com

*Counsel for Defendant New York Mercantile Exchange, Inc.*

Pursuant to Local Rule 56.1, Defendant New York Mercantile Exchange, Inc. ("NYMEX") respectfully submits this Counter-statement to the Statement of Additional Material Facts submitted by Plaintiff U.S. Commodity Futures Trading Commission (the "CFTC's Additional Facts").

1. Plaintiff respectfully incorporates by reference the additional material facts contained in the responses to the 56.1 statements submitted by Byrnes and Curtin.

**RESPONSE TO NO. 1:** Local Rule 56.1 does not allow a party to incorporate by reference purported statements of material fact set forth in a separate filing. CFTC Additional Fact No. 1 is therefore improper, and no response is required. To the extent the Court determines a response should be made, NYMEX disputes the purported additional material facts set forth in the CFTC's responses to the 56.1 statements submitted by Byrnes and Curtin on the ground that they are irrelevant to NYMEX's Motion for Summary Judgment. NYMEX reserves all rights to further dispute such facts at trial.

2. The disclosures at issue were numerous, frequent, and extended for over two years. See Decl. of Joseph P. Allgor (ECF No. 136), Ex. C (transcripts of recordings produced by the CFTC in connection with Plaintiffs' Supplemental Answer and Objections to Defendant New York Mercantile Exchange, Inc.'s Interrogatories Response No. 7); Decl. of Samuel F. Abernethy (ECF No. 142), Ex. 25-40 (transcript of 16 recordings referenced in Exhibit B of the Amended Complaint); Ex. 84 (transcript of recording produced under bates number CME-CFTC-Sup-174103); Ex. 92 (transcript of recording produced under bates number CME-CFTC-Sup-174104); Ex. 124 (transcript of recording with bates number CME-CFTC-Sup14069); Ex. 125 (transcript of recording with bates number CME-CFTC-Sup174070); Ex. 126 (transcript of recording with bates number CME-CFTC-SUP 174084); Ex. 127 (transcript of recording with bates number CME-CFTC-SUP-174086); Ex. 128 (transcript of recording with bates number CME-CFTC-174101); Ex. 129 (transcript of recording with bates number CME-CFTC-SUP-174178); Ex. 130 (transcript of recording with bates number CME-CFTC-SUP174182); Ex. 131 (transcript of recording with bates number CME-CFTC-SUP174183); Ex. 132 (transcript of

recording with bates number CME-CFTC-SUP174186); Ex. 133 (transcript of recording with bates number CME-CFTC-SUP174187).

**RESPONSE TO NO. 2:**   Undisputed that the disclosures of trade information at issue in this case occurred between February 2008 and September 2010, and that each of the transcripts cited above contains a disclosure by either Byrnes or Curtin to Eibschutz, which occurred during this period of time. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 2 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

3.   In addition to Byrnes and Curtin, at least one other NYMEX employee also made improper disclosures of trade information to Eibschutz, and another NYMEX employee made improper disclosures of trade information to someone other than Eibschutz. See Ex. 19 (Keating Dep. 10/16/15) 70:20-72:7, 78:2-82:20.

**RESPONSE TO NO. 3:**   Undisputed subject to the following clarifications: (i) NYMEX is aware of only one other employee – Manny Ramirez – who on one occasion in early 2008 disclosed confidential trade data to Eibschutz (*see* CFTC Statement of Undisputed Facts (ECF No. 149) ¶ 90, CFTC Ex. 87); (ii) when Keating learned of the disclosure for the first time at his deposition, he testified that had he known of the disclosure, he would have recommended that Garcia be terminated (*see* CFTC Ex. 19 (Keating Dep. 10/16/15) 82:9-20), and; (iii) upon learning of the one other NYMEX employee who disclosed confidential ClearPort data to a person other than Eibschutz, NYMEX terminated that employee (*see* CFTC Ex. 19 (Keating Dep. 10/16/15) 70:20-72:7.) Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 3 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

4.   In June 2009, NYMEX received a complaint alerting it that "Billy" in trade support was disclosing confidential information about trades to a broker. NYMEX conducted a cursory investigation, identified "Billy" as Byrnes, but failed to detect any of his or Curtin's disclosures (even though they were memorialized on NYMEX's own recorded phone lines) and did not even ask Byrnes about his conduct. See Ex. 96 (Keating Dep. 10/16/16) 82:21-87:20, 90:23-91:04, 92:17-93:13, 96:18-98:18, 99:18-103:2); Ex. 108 (13CIV1174-CFTC-0014227); Ex. 116 (13CIV1174-CFTC-0014226). See also ¶¶ 48-52 above (NYMEX Statement of Undisputed Facts ¶¶ 48-52).

**RESPONSE TO NO. 4:**     Undisputed that in July 2009, NYMEX received a call alleging that a person named "Billy" who worked at the Exchange had been giving out confidential trade information to a broker, and that NYMEX completed an investigation into the complaint. It is further undisputed that NYMEX did not speak to Byrnes about the allegation or detect any of Byrnes's or Curtin's disclosures as a result of the investigation. NYMEX disputes the characterization of its investigation as "cursory." NYMEX further clarifies that the investigation into the allegation of disclosures included reviewing Byrnes' instant messages, as well as his emails and phone line recordings. NYMEX Statement of Undisputed Facts ¶ 51. It also included an interview of the source of the allegation. NYMEX Statement of Undisputed Facts ¶ 54. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 4 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

5.     NYMEX never disclosed the 2009 complaint and investigation to the Commission, and when it came to light during investigatory testimony on June 22, 2011, NYMEX had to backtrack on statements it had previously made to the CFTC Division of Enforcement to the effect that NYMEX first learned of any possibility that Byrnes may have been disclosing trade information shortly before he was fired in December 2010. See Ex. 114 (13CIV1174-CFTC-0006765); Ex. 115 (13CIV1174-CFTC-0190443).

**RESPONSE TO NO. 5:**     Undisputed that NYMEX did not disclose the July 2009 complaint and investigation to the Commission at that point in time and that it later came to light during investigatory testimony in 2011. NYMEX disputes the CFTC's characterization of the subsequent disclosure as a "backtrack" on prior statements and further clarifies that NYMEX did not notify the CFTC of the 2009 complaint and investigation at the time that they arose because the investigation did not reveal any instances of misconduct. See NYMEX 56.1 ¶¶ 52-54. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 5 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

6.     NYMEX management and compliance staff were made aware of the unlawful disclosures but did nothing about it. For example, when Curtin informed his NYMEX supervisor that he had disclosed information to Eibschutz, the supervisor's response was "not to worry, we have your back." See Ex. 15 (Curtin Dep. 11/24/15) 171:16-18, 172:14-174:18. Curtin likewise testified that a NYMEX compliance official was similarly informed of the disclosures, and his response "was along the lines of you guys should handle it." See Ex. 94 (Curtin Dep. 11/24/15) 178:23-179:21.

**RESPONSE TO NO. 6:** Disputed that management and compliance staff were made aware of the unlawful disclosures but did nothing about it and that when Curtin informed his NYMEX supervisor that he had disclosed information to Eibschutz, the supervisor's response was "not to worry, we have your back." Curtin's NYMEX supervisor, Ralph Cusumano testified that he never thought that anyone in his department or anyone who worked for NYMEX would disclose information, and that he never suspected that anyone had done so. (Hogan Dec. Ex. 7 (Cusumano Dep.) 225:09-17 (ECF No. 137-7).) The former compliance officer, Anthony Densieski, testified that Curtin and Cusumano never reported to him that Curtin had disclosed confidential information to a market participant. (Lape Dec. Ex. 8 (Densieski Dep.) 118:11-14; *see also* 95:25-98:6.) *See also* NYMEX Statement of Add'l Fact No. 12 and evidence cited therein. Undisputed that Curtin testified as quoted above.

7. While NYMEX asserts that it had policies prohibiting employees from disclosing confidential information, there is evidence that such policies were ignored. For example, a senior NYMEX official opined, regarding compliance with those policies, that "nobody looks at that crap," including the senior official himself. See Ex. 96 (Keating Dep. 10/16/15) 207:11-17; Ex. 111 (13CIV1174-CFTC-0173438) p. 2-3.

**RESPONSE TO NO. 7:** Undisputed that NYMEX had policies prohibiting employees from disclosing confidential information, and that Keating testified as quoted above. Disputed that Keating's testimony was in connection with compliance with those policies or that there is evidence that NYMEX personnel ignored those policies. Keating stated that nobody goes to the Company's H: drive and looks at procedures to refresh their understanding of procedures, and for that reason, the importance of confidentiality is "constantly drilled [in] and talked about." See CFTC Ex. 111 (13CIV1174-CFTC-0173438) p. 2-3. *See also* NYMEX 56.1 Ex. 1 (Holzrichter Dep.) at 229:2-22; NYMEX 56.1 Ex. 9 (Keating Dep.) at 192:14-25; NYMEX 56.1 Ex. 10 (2012 Keating Dep.) at 63:2-16, 142:3-143:5. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 7 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

8. The same official who characterized NYMEX's policies as "crap" that employees do not even look at acknowledged during his deposition that he previously gave inaccurate sworn investigative testimony to the CFTC regarding a NYMEX policy relating to ClearPort. See Ex. 96 (Keating Dep. 10/16/15) 217:5-17.

**RESPONSE TO NO. 8:** Disputed that Keating characterized NYMEX's policies as "crap" that employees do not even look at. Keating stated that nobody goes to the Company's H: drive and looks at procedures to refresh their understanding of procedures, and for that reason, the importance of confidentiality is "constantly drilled [in] and talked about." When Keating stated that Khadija "knows nobody looks at that crap," it was in reference to the set of policies located

5

on the H: drive. See CFTC Ex. 111 (13CIV1174-CFTC-0173438) p. 2-3. Undisputed that Keating acknowledged during his deposition that he had previously given inaccurate investigative testimony regarding a NYMEX policy, subject to the clarification that Keating testified that at the time he gave his answers, he "believed all [of the] answers to be truthful to the best of [his] knowledge and recollection." See Hogan Supp. Decl. Ex. 40 (Keating Dep. 10/16/15) at 216:9-21. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 8 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

9.     On February 3, 2012, Keating gave sworn investigatory testimony to the CFTC's Division of Enforcement about an undated NYMEX document entitled "User Verification Policy." Keating testified, among other things, that he did not know the date the document was written; that he did not know why the document was not dated; that he believed he first saw the document in the "last couple of years"; and that he did not believe he had discussed the document with anyone within the prior month. See Ex. 105 (Keating Dep. 2/13/12) 152:9-156:5. Shortly after this testimony, NYMEX produced documents and recorded conversations showing that on January 11, 2012, just 23 days prior to his sworn testimony, Keating had had multiple phone calls and email exchanges with Ralph Cusumano, who had been the direct supervisor of Byrnes and Curtin, in which Keating discussed the policy with Cusumano; learned that the policy was not written down; and directed Cusumano to put the policy in writing but not to date the document. See Ex. 110 (13CIV1174-CFTC-0173436); Ex. 111 (13CIV1174-CFTC-0173438). In a recorded conversation between Keating and Cusumano on January 11, 2012, Keating said he had to "figure out how [the policy document] plays into our issues" with Byrnes and Curtin. See Ex. 110 (13CIV1174-CFTC-0173436), p. 2.

**RESPONSE TO NO. 9:**     Undisputed, subject to the clarification that Keating subsequently testified that at the time he gave his testimony on February 13, 2012, he "believed all [of the] answers to be truthful to the best of [his] knowledge and recollection." See Hogan Supp. Decl. Ex. 40 (Keating Dep. 10/16/15) at 216:9-21. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 9 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

10. In testimony in 2015 concerning the NYMEX ClearPort facilitation desk's adherence to confidentiality policies during the time period of the disclosures, as well as NYMEX's ability to monitor compliance with the policies, CME's Chief Operations Officer Julie Holzrichter testified that NYMEX was "not at that grown up stage" in terms of those issues, and she viewed NYMEX as being "five/ten years" behind its parent company, CME Group, in terms of the formality and automation of those functions. In her own words, NYMEX was still in "[t]he evolution of becoming a grown up." See Ex. 97 (Holzrichter Dep. 9/23/15) 232:4-20.

**RESPONSE TO NO. 10:** Undisputed, subject to the clarification that Holzrichter's testimony pertained to the time period of the disclosures, which occurred between 2008 – 2010, and did not in any way relate to the status of NYMEX's compliance policies and procedures today. *See* NYMEX 56.1 Ex. 1 (Holzrichter Dep.) at 229:2-232:21. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 10 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

11. During the course of this litigation, NYMEX belatedly produced (well beyond the discovery completion deadline) over 100 relevant audio recordings, including recordings reflecting illegal disclosures to Eibschutz by NYMEX employees. See Ex. 123 (Order dated June 3, 2016) (ECF No. 90).

**RESPONSE TO NO. 11:** Undisputed that NYMEX produced over 100 audio recordings responsive to the CFTC's discovery requests after the close of fact discovery in this case, some of which contain disclosures of confidential trade information by Defendants Byrnes and Curtin to Defendant Eibschutz. Disputed that any of the recordings reflect illegal disclosures to Eibschutz by NYMEX employees. Notwithstanding the foregoing, NYMEX disputes that CFTC Additional Fact No. 11 is a material fact that is relevant to NYMEX's Motion for Summary Judgment.

12. As to why he disclosed confidential trade information to Eibschutz, Curtin testified that he "maybe" acted out of "laziness" or a feeling that he was "above it all." See Ex. 15 (Curtin Dep. 11/24/15) 197:16-199:16.

**RESPONSE TO NO. 12:** Undisputed.

13. Byrnes admits that he did not disclose confidential trade information to Eibschutz to "confer[] a benefit" on NYMEX. See Ex. 5 (Byrnes Resp. to NYMEX RFA) No. 1.

**RESPONSE TO NO. 13:** Undisputed, subject to the clarification that Byrnes admitted in full, that "when [he] disclosed confidential trade information to Ron Eibschutz, it was not for the purpose of conferring a benefit on NYMEX. *Id.*

14. Curtin admits that he did not disclose confidential trade information to Eibschutz to "confer[] a benefit" on NYMEX. See Hogan Decl., Ex. 39 (Curtin Resp. to NYMEX RFA) No. 1.

**RESPONSE TO NO. 14:** Undisputed, subject to the clarification that Curtin admitted in full, that "when [he] disclosed confidential trade information to Ron Eibschutz, it was not for the purpose of conferred a benefit on NYMEX. *Id.*

Dated: April 20, 2017

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

*/s/ Albert L. Hogan III*
Patrick Fitzgerald
Albert L. Hogan III
Marcella Lape
155 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
Email: patrick.fitzgerald@skadden.com
Email: albert.hogan@skadden.com
Email: marcella.lape@skadden.com

*Counsel for Defendant New York Mercantile Exchange, Inc.*