UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
U.S. COMMODITY FUTURES TRADING           :
COMMISSION,                                              :
                                                        :
                              Plaintiff,       :                    13-CV-1174 (VSB)
                                                        :
                - against -                     :            **OPINION & ORDER**
                                                        :
WILLIAM BYRNES, CHRISTOPHER            :
CURTIN, THE NEW YORK MERCANTILE    :
EXCHANGE, INC., and RON EIBSCHUTZ,   :
                                                        :
                              Defendants.    :
                                                        :
--------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/19/2019
```

Appearances:

Patryk J. Chudy
David W. MacGregor
Patrick Daly
Alejandra de Urioste
David C. Newman
Division of Enforcement, U.S. Commodity Futures Trading Commission
New York, New York
*Counsel for Plaintiff*

Albert Hogan III
Patrick Fitzgerald
Marcella Lape
Skadden, Arps, Slate, Meagher & Flom LLP
Chicago, Illinois
*Counsel for Defendant The New York Mercantile Exchange, Inc.*

Samuel F. Abernethy
Wojciech Jackowski
Alexander Mirkin
Menaker & Herrmann LLP
New York, New York
*Counsel for Defendant Christopher Curtin*

Robert L. Herskovits
Joseph P. Allgor
Herskovits PLLC
New York, New York
*Counsel for Defendant Williams Byrnes*

Paul Lewis Shechtman
Chelsea Lin O'Donnell
Rachel Bess Goldman
Benjamin Zev Koblentz
Bracewell LLP
New York, New York
*Counsel for Defendant Ron Eibschutz*

VERNON S. BRODERICK, United States District Judge:

      Before me are Plaintiff U.S. Commodity Futures Trading Commission's ("Plaintiff" or "CFTC") motion for partial summary judgment, and Defendants William Byrnes's ("Byrnes"), Christopher Curtin's ("Curtin"), and The New York Mercantile Exchange, Inc.'s ("NYMEX"), motions for summary judgment. Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Plaintiff's motion is granted to the extent that it establishes that certain disclosures made by Byrnes and Curtin were non-public, and to the extent that it establishes the liability of Defendant Ron Eibschutz under 7 U.S.C. 13c(a). Because there are triable issues of fact regarding the materiality of the information disclosed by Byrnes and Curtin and whether they acted with the requisite scienter, Plaintiff's motion as to Byrnes and Curtin is otherwise DENIED, and Byrnes's and Curtin's motions are DENIED in their entirety. Because there is a triable issue of fact as to whether Byrnes and Curtin were acting within the scope of their employment, Plaintiff's motion as to NYMEX's liability is DENIED, and NYMEX's motion is DENIED.

## I.    **Background**

Defendant NYMEX is a commodity futures and options exchange.  (Pl. 56.1 ¶ 2.)[1]   It

offers to customers an electronic platform called ClearPort that provides, among other things,

clearing services for over-the-counter derivatives transactions.[2]  (*Id.* ¶ 3; Pl. Resp. to Byrnes 56.1

¶ 3; Pl. Resp. to Curtin 56.1 ¶ 8; Pl. Resp. to NYMEX 56.1 ¶ 32.)[3]  All trades entered into using

ClearPort are contained in a trade blotter that details the identities of the buyer and seller; the

broker, if any, that entered the trade into the system; and the price, volume, and terms of the

trade.  (Pl. 56.1 ¶ 62.)  NYMEX restricted access to the ClearPort system to the parties to the

trade, the broker, and the clearing member who clears the trade.  (*Id.* ¶ 105.)  Although NYMEX

publishes the aggregate daily volume of trading in each contract cleared through ClearPort, it

does not publish:  the names of the entities that trade a particular contract; the number of

different market participants that comprised the trading volume in a product or the number of

trades that constituted the day's total trading in a product; the size or price of individual

transactions; or, which individual traders executed transactions in a particular contract for a

given market participant.  (*Id.* ¶ 101.)

---

[1] "Pl. 56.1" refers to the Statement of Undisputed Facts in Support of Plaintiff U.S. Commodity Futures Trading Commission's Motion for Summary Judgment, dated December 27, 2016.  (Doc. 149.)  Unless otherwise indicated, citations to Plaintiff's 56.1 statement are only to facts that are undisputed by all Defendants except Eibschutz, who did not respond to Plaintiff's 56.1 statement.

[2] Over-the-counter transactions occur directly between private parties rather than through an exchange.  *See U.S. Commodity Futures Trading Comm'n v. Byrnes*, 58 F. Supp. 3d 319, 320 n.1 (S.D.N.Y. 2014).

[3] "Pl. Resp. to Byrnes 56.1" refers to Plaintiff's Response to Defendant Christopher Curtin's Statement Pursuant to Local Rule 56.1 and Plaintiff's Statement of Additional Material Facts Pursuant to Rule 56.1(b), dated February 15, 2017.  (Doc. 171.)  "Pl. Resp. to Curtin 56.1" refers to Plaintiff's Response to Defendant Christopher Curtin's Statement Pursuant to Local Rule 56.1 and Plaintiff's Statement of Additional Material Facts Pursuant to Rule 56.1(b), dated February 15, 2017.  (Doc. 172.)  "Pl. Resp. to NYMEX 56.1" refers to Plaintiff's Response to Defendant New York Mercantile Exchange, Inc.'s Statement Pursuant to Local Rule 56.1 and Plaintiff's Statement of Additional Material Facts Pursuant to Rule 56.1(b), dated February 17, 2017.  (Doc. 169.)

NYMEX employed Defendant Byrnes from March 2007 through December 2010 and Defendant Curtin from July 2000 through April 2009.  (*Id.* ¶¶ 17–18, 23–24.)  During their employment with NYMEX, Byrnes and Curtin were responsible for providing ClearPort users with timely and accurate assistance in resolving issues related to the use of the ClearPort platform.  (*Id.* ¶¶ 21, 25.)  During the relevant time period, Defendant Eibschutz was a broker of energy futures and options in the crude oil and natural gas markets, and he used ClearPort to clear the trades he brokered.  (*Id.* ¶¶ 13–15.)  Byrnes and Curtin came to know Eibschutz socially, interacting both on the phone and in person at social engagements.  (Pl. Resp. to Byrnes 56.1 ¶¶ 6–8; Pl. Resp. to Curtin 56.1 ¶ 6.)

Byrnes and Curtin disclosed information about commodity trades that they obtained through their employment at NYMEX to Eibschutz, and NYMEX defined that information as confidential.  (Pl. 56.1 ¶¶ 57–58, 64, 69.)  This information included, in some instances, the identities of the parties to specific trades, which party purchased and which sold, the number of contracts traded, the price of the trade, and the identities of the brokers involved in the trade.  (*Id.* ¶¶ 108, 125.)  Some of these disclosures were captured on recorded telephone calls, the contents of which are not in dispute.[4]  (*See id.* ¶¶ 109–24, 126–31.)

In July 2009, a broker lodged a complaint with NYMEX regarding disclosures by a NYMEX employee associated with ClearPort named "Billy."[5]  (*Id.* ¶ 187.)  In response, the Managing Director of NYMEX Operations and head of the New York office conducted an investigation, which included reviewing one day of Byrnes's emails, instant messages, and

---

[4] Although Plaintiff alleges additional disclosures, Plaintiff only moves for summary judgment on the fifty-one disclosures made by Byrnes and the seventeen disclosures made by Curtin during these recorded calls.  (*See* Docs. 140, 148.)  Defendants move for summary judgment as to all alleged disclosures.  (*See* Docs. 131, 134, 141.)

[5] Defendant Byrnes is also known as "Billy."  (Pl. 56.1 ¶ 6.)

recorded telephone calls, and an interview with the broker who had lodged the complaint.  (*Id.* ¶¶ 188–89; NYMEX 56.1 ¶¶ 50–53.)[6]  The Managing Director did not "confront Byrnes about the July 2009 complaint or disclosure allegations."  (Pl. 56.1 ¶ 190.)  In July 2010, NYMEX promoted Byrnes to a supervisory position on the ClearPort Facilitation Desk; a position he held until his employment was terminated in December 2010.  (*Id.* ¶ 19.)

In November 2010, NYMEX received another complaint from a market participant regarding Eibschutz's access to trade information.  (*Id.* ¶ 192.)[7]  The same Managing Director who investigated the July 2009 complaint also investigated the November 2010 complaint, and as part of the second investigation reviewed Byrnes's communications over a longer time period.  (*Id.* ¶ 193.)  The investigation revealed Byrnes's improper disclosure of confidential trade details to Eibschutz, and resulted in the termination of Byrnes's employment at NYMEX.  (See *id.* ¶¶ 193–195.)  Curtin voluntarily terminated his employment with NYMEX in April 2009 to pursue an opportunity with a different company.  (Curtin 56.1 ¶ 3.)[8]

## II.   **Procedural History**

Plaintiff filed its initial Complaint on February 21, 2013.  (Doc. 1.)  The case was originally assigned to Judge George B. Daniels, and was reassigned to me on February 5, 2014. On May 2, 2013, Plaintiff sought leave to amend its complaint to add Eibschutz as a defendant,

---

[6] "NYMEX 56.1" refers to the Local Rule 56.1 Statement of Undisputed Facts in Support of New York Mercantile Exchange, Inc.'s Motion for Summary Judgment, filed December 15, 2016.  (Doc. 133.)

[7] Byrnes, Curtin, and NYMEX all dispute in part the factual assertion in Paragraph 192; however, each of them concedes that NYMEX received a complaint about Eibschutz.  (*See* Byrnes 56.1 Resp. ¶ 192; Curtin 56.1 Resp. ¶ 192; NYMEX 56.1Resp. ¶ 192.)  "Byrnes 56.1 Resp." refers to Defendant William Byrnes' Counterstatement of Material Undisputed Facts Pursuant to Local Rule 56.1, dated February 15, 2017.  (Doc. 162.)  "Curtin 56.1 Resp." refers to Defendant Christopher Curtin's Counter-Statement of Material Undisputed Facts and Statement of Additional Undisputed Facts Pursuant to Local Rule 56.1 in Opposition to Plaintiff's Motion for Summary Judgment, dated February 15, 2017.  (Doc. 166.)  "NYMEX 56.1 Resp." refers to New York Mercantile Exchange, Inc.'s Response to Plaintiff's Statement of Undisputed Facts, dated February 15, 2017.  (Doc. 173.)

[8] Plaintiff disputes in part the factual assertions made in Paragraph 3, but it does not dispute that Curtin "left [NYMEX in April 2009] for another job."  (*See* Pl. Resp. to Curtin 56.1 ¶ 3.)

(Doc. 15), and all other parties consented to Plaintiff's filing an amended complaint, (Doc. 16 at 2).  Judge Daniels granted the motion to amend on May 8, 2013, (Doc. 18), and Plaintiff filed its amended complaint on that same day, (Doc. 19).  Defendant Byrnes filed his answer to the amended complaint on January 29, 2014, (Doc. 38), and Defendant Curtin filed his answer to the amended complaint on January 31, 2014, (Doc. 40).  On January 31, 2014, Defendant NYMEX filed a motion to dismiss, (Doc. 41), which I denied on September 30, 2014, (Doc. 57).[9]

On October 10, 2016, Plaintiff and Defendants NYMEX, Byrnes, and Curtin each filed a letter in anticipation of a motion for summary judgment, (Docs. 116–19), and the parties filed responses on October 13, 2016, (Docs. 120–24).   On December 15, 2016, Plaintiff filed a motion for partial summary judgment, (Doc. 140), and Defendants NYMEX, Byrnes, and Curtin each filed a motion for summary judgment, (Docs. 131, 134, 141).  Each motion was supported by a Local Rule 56.1 statement, (Docs. 133, 138, 146, 149), a memorandum of law, (Docs. 132, 143, 148, 150), and declarations with exhibits, (Docs. 136, 137, 142, 153).  On January 11, 2017, Defendant Eibschutz filed a letter stating that he joined the motions for summary judgment filed by Defendants Byrnes and Curtin, but he did not file a Local Rule 56.1 statement, a memorandum of law, or a declaration.  (*See* Doc. 151.)  On February 15, 2017, Defendants NYMEX, Byrnes, and Curtin each filed a memorandum in opposition to Plaintiff's motion, (Docs. 160, 163, 175), which were supported by Local Rule 56.1 counterstatements, (Docs. 162, 166, 173), and declarations with exhibits, (Docs. 161, 164–65, 174).  Defendant Eibschutz did not submit any documents in opposition to Plaintiff's motion.  On the same day, Plaintiff filed a memorandum, a Local Rule 56.1 counterstatement, and a declaration with exhibits in opposition to NYMEX's motion, (Docs. 168–69, 181), and a single memorandum in opposition to

---

[9] The case was reassigned to me on February 5, 2014.

Defendants Byrnes's and Curtin's motions, (Doc. 170), supported by Local Rule 56.1 counterstatements, (Docs. 171–72).  On April 20, 2017, the parties filed reply memoranda in further support of their motions, (Docs. 192–93, 195, 200), and Defendant Eibschutz filed a letter titled a "reply submission," (Doc. 191).  Defendants NYMEX, Byrnes, and Curtin also submitted declarations with exhibits in further support of their motions.  (Docs. 196, 199, 201, 207–09.)

### III.   <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

IV.   **Discussion**

A.   ***Liability for Byrnes and Curtin Under Section 9(e)(1) and Regulation 1.59(d)(1)(ii)***

The first cause of action in the amended complaint alleges violations by Defendants Byrnes and Curtin of Section 9(e)(1) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13(e)(1), and CFTC Regulation 1.59(d)(1)(ii), 17 C.F.R. § 1.59(d)(1)(ii).  (*See* Am. Compl. ¶¶ 72–86.)[10]  Section 9(e)(1) makes it unlawful for an employee of organizations such as NYMEX  "willfully and knowingly to disclose for any purpose inconsistent with the

---

[10] "Am. Compl." refers to the Amended Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act, dated May 8, 2013.  (Doc. 19.)

performance of such person's official duties as an employee or member, any material nonpublic information obtained through special access related to the performance of such duties."  7 U.S.C. § 13(e)(1).  Similarly, Regulation 1.59(d)(1)(ii) states that such an employee shall not "[d]isclose for any purpose inconsistent with the performance of such person's official duties as an employee . . . any material, non-public information obtained through special access related to the performance of such duties."  17 C.F.R. § 1.59(d)(1)(ii).  Although Byrnes and Curtin do not dispute that Section 9(e)(1) and Regulation 1.59(d)(1)(ii) apply to them and concede that they provided confidential information to Eibschutz, they argue that the information they provided was not material and that they did not have the requisite scienter when providing the information. (*See* Byrnes Mem. 4–15; Curtin Mem. 4–21.)[11]  Curtin also argues that Plaintiff failed to meet its burden of proving that the information Curtin provided to Eibschutz was non-public.  (*See* Curtin Opp. 17.)[12]  Finally, Byrnes argues that Plaintiff is impermissibly attempting to apply Section 9(e) and Regulation 1.59 to conduct for which they were never intended.  (*See* Byrnes Mem. 15–22.)

## 1.  Material Information

Regulation 1.59 provides a definition for the term "material":

Material information means information which, if such information were publicly known, would be considered important by a reasonable person in deciding whether to trade a particular commodity interest on a contract market or a swap execution facility, or to clear a swap contract through a derivatives clearing organization.  As used in this section, "material information" includes, but is not limited to, information relating to present or anticipated cash positions, commodity interests, trading strategies, the financial condition of members of self-regulatory organizations or members of linked exchanges or their customers, or the regulatory

---

[11] "Byrnes Mem." refers to the Memorandum of Law in Support of Defendant William Byrnes' Motion for Summary Judgment, dated January 6, 2017.  (Doc. 150.)  "Curtin Mem." refers to the Memorandum of Law of Defendant Christopher Curtin in Support of His Motion for Summary Judgment, dated December 15, 2016.  (Doc. 143.)

[12] "Curtin Opp." refers to the Memorandum of Law of Defendant Christopher Curtin in Opposition to Plaintiff's Motion for Summary Judgment, dated February 15, 2017.  (Doc. 163.)

actions or proposed regulatory actions of a self-regulatory organization or a linked exchange.

17 C.F.R. § 1.59(a)(5).  Plaintiff urges me to disregard the first sentence of this definition and find that, because the information disclosed by Byrnes and Curtin related to trading positions, (*see* Pl. 56.1 ¶¶ 108–31), it was *per se* material for the purposes of Regulation 1.59, without any inquiry into its importance to a reasonable commodity investor, (s*ee* Pl. Mem. 13–17).[13]  Byrnes, Curtin, and NYMEX, on the other hand, contend that the first sentence and the second sentence of Regulation 1.59(a)(5) must be read together, and that the second sentence is an illustrative list of the types of information that should not be disclosed if it would be important to a reasonable investor.[14]  (*See, e.g.*, Byrnes Mem. 7–10; Curtin Mem. 4–8; Byrnes Opp. 7–9; Curtin Opp. 5–12.)[15]

If the second sentence of Regulation 1.59(a)(5) is read in isolation, under the definition of "material" articulated in the sentence, even trivial information that technically falls into one of the enumerated categories would be considered material.  However, that same information would not meet the definition of "material" set forth in the first sentence.  When read separately there is a clear conflict between the two sentences; this conflict creates an ambiguity that must be resolved.  Typically, courts defer to an agency's interpretation of its own ambiguous regulation, even if that position is articulated in a legal brief.  *See Roth ex rel. Beacon Power Corp. v.*

---

[13] "Pl. Mem." refers to Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, dated December 27, 2019.  (Doc. 148.)

[14] In support of its argument that it cannot be vicariously liable because there was no primary violation of Section 9(e)(1) or Regulation 1.59(d)(1)(ii), NYMEX makes similar arguments regarding the appropriate materiality definition.  (*See* NYMEX Opp. 6–13.)  "NYMEX Opp." refers to New York Mercantile Exchange, Inc.'s Opposition to Plaintiff U.S. Commodity Futures Trading Commission's Motion For Summary Judgment, dated February 15, 2016.  (Doc. 175.)  NYMEX also argues that Plaintiff's interpretation would render Regulation 1.59(a)(5) arbitrary and capricious.  (*See id.* at 12–13 (citing, *inter alia*, *A.T. & T. v. FCC*, 836 F.2d 1386, 1391 (D.C. Cir. 1988)).)

[15] "Byrnes Opp." refers to Defendant Byrnes's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, dated February 15, 2017.  (Doc. 160.)

*Perseus L.L.C.*, 522 F.3d 242, 247 (2d Cir. 2008).  However, deference is inappropriate where a position articulated by an agency in a legal brief conflicts with that agency's prior interpretation, because that conflict may be an indication that the interpretation in the legal brief "does not reflect the agency's fair and considered judgment on the matter in question."  *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)).

Here, Plaintiff's interpretation of Regulation 1.59(a)(5) conflicts with an interpretation previously articulated by the CFTC.  In 1993, the CFTC adopted several amendments to Regulation 1.59.  *See* Prohibition on Insider Trading, 58 Fed. Reg. 54,966 (Oct. 25, 1993).  As part of the amendment process, the CFTC proposed adding a reference to "linked exchanges" among the enumerated categories in the second sentence of Regulation 1.59(a)(5).  *See id.* at 54,972.  The Chicago Board of Trade and the Board of Trade Clearing Corporation submitted comments on that proposed change, articulating their concerns that "the addition would have an overly broad regulatory effect."  *Id.*  Notwithstanding these concerns, the CFTC elected to retain the inclusion of "linked exchanges," and addressed the concerns by stating that "the [CFTC] wishes to reiterate that information of this type would be considered 'material' only if a reasonable person would consider it important in making a trading decision."  *Id.*  In other words, the inclusion of "linked exchanges" in the second sentence would be interpreted with reference to the first sentence of Regulation 1.59(a)(5).  Therefore, the CFTC previously interpreted the first sentence of Regulation 1.59(a)(5) to apply to the categories of information in the second sentence—an interpretation that conflicts with the interpretation advocated by the CFTC in this case—which suggests that the interpretation it proposes in this lawsuit—that the

second sentence creates a subset of *per se* material information—is merely "a convenient litigating position." *Christopher.*, 567 U.S. at 155 (internal quotation marks omitted).

The 1993 interpretation is consistent with the Second Circuit's articulation of the meaning of materiality for purposes of other sections of the CEA. *See Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 111 (2d Cir. 1986) ("In the securities law context, a statement is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. We see no reason to deviate from this standard in the commodities realm." (internal citation omitted)). Indeed, I may not defer to the CFTC's interpretation of Regulation 1.59(a)(5), because entities and persons in the industry have been relying on their previous interpretation for over twenty years. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2417–18 (2019) (noting that "a court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties"). Accordingly, for purposes of Regulation 1.59, I find that information—even information that falls into one of the enumerated categories in the second sentence of Regulation 1.59(a)(5)—is only material if it "would be considered important by a reasonable person in deciding whether to trade a particular commodity interest on a contract market or a swap execution facility, or to clear a swap contract through a derivatives clearing organization." 17 C.F.R. § 1.59(a)(5).[16]

For purposes of interpreting the term "material" in Section 9(e)(1), Plaintiff argues that Section 9(e)(1) and Regulation 1.59 "are entirely harmonious" and that the definition of "material" in the regulation should apply to term in the statute. (*See* Pl. Reply 8.)[17] Defendant

---

[16] This interpretation, which gives meaning to both sentences in 17 C.F.R. § 1.59(a)(5), is consistent with "one of the most basic interpretive canons . . . that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *United States v. Abdur–Rahman*, 708 F.3d 98, 102 (2d Cir. 2013), *as amended* (Mar. 13, 2013) (citation omitted).

[17] "Pl. Reply" refers to Plaintiff's Reply Memorandum of Law in Support of Motion for Partial Summary Judgment, dated April 20, 2017. (Doc. 192.)

Curtin argues that the language in Regulation 1.59(a), which begins with the statement, "For purposes of this section . . . . ," limits the application of the definition to the regulation. (*See* Curtin Opp. 6–7.) Curtin advocates for the definition of materiality articulated in *Saxe*, 789 F.2d at 111. (*Id.*) The *Saxe* standard is not substantively different from the standard in the first sentence of Regulation 1.59(a)(5), so I need not reach the question of whether Regulation 1.59(a)(5) applies to Section 9(e)(1).

Plaintiff concedes that the application of the *Saxe* materiality standard and/or the standard set forth in the first sentence of Regulation 1.59(a)(5) creates a genuine issue of fact for trial. (*See* Pl. Reply 9 ("There would indeed be a genuine issue of fact as to materiality if . . . the Court were required to . . . assess whether specific pieces of confidential trade data would useful be [*sic*] to a reasonable commodities trader.").) Because I have found that this standard applies, Plaintiff's motion for a finding that the information disclosed in Byrnes's fifty-one disclosures and Curtin's seventeen disclosures was material is denied.

Similarly, the motions of Byrnes and Curtin for a finding that none of their disclosures was material must also be denied. The standard for materiality under Section 9(e)(1) and Regulation 1.59, as set forth above, is substantially similar to the standard for materiality in the securities context, and cases in the securities context have held that materiality is a "mixed question of law and fact" that is "especially well suited for jury determination." *United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015) (internal quotation marks omitted). I see no reason not to apply this logic in the context of this commodities case. *See Saxe*, 789 F.2d at 111. Plaintiff identifies testimony from fact witnesses that could support a jury's finding that the disclosed information would be important to a reasonable commodity investor. (*See e.g.*, Kokal Decl. Ex.

24, at 24:3-25:3; *id.* Ex. 34, at 38:7-15.)[18]  Plaintiff's expert also opined that the information

disclosed by Byrnes and Curtin would be important to a reasonable commodity investor.  (*See*

Abernethy 12/15/2016 Decl., Ex. 18 ¶¶ 50–103.)[19]  Such testimony could reasonably support a

jury's verdict for Plaintiff, so Byrnes's and Curtin's motions must be denied.

## 2.   Non-Public Information

As discussed above, both Section 9(e)(1) and Regulation 1.59(d)(1)(ii) prohibit the

disclosure of "non-public information."  Plaintiff moves for partial summary judgment with

regard to fifty-one disclosures made by Byrnes and seventeen disclosures made by Curtin.  (*See*

Pl. Mem. 5–7.)  Byrnes does not dispute that his fifty-one disclosures were non-public.  (*See*

*generally* Byrnes Mem; Byrnes Opp.)[20]  Therefore, I find that those disclosures were non-public.

Curtin, on the other hand, asserts that Plaintiff has failed to prove that his seventeen disclosures

were non-public.[21]  (*See* Curtin Opp. 17–21.)

Regulation 1.59(a)(6) states that "non-public information" is "information which has not

been disseminated in a manner which makes it generally available to the trading public."  No

court has interpreted the meaning of Regulation 1.59(a)(6).  However, both Plaintiff and Curtin

invoke the same Second Circuit opinion, which stated, in the securities context, that information

remains non-public until it is "disclosed to achieve a broad dissemination to the investing public

---

[18] "Kokal Decl." refers to the Declaration of Trevor Kokal Pursuant to 28 U.S.C. § 1746, submitted in support of Plaintiff's motion for partial summary judgment, dated February 3, 2017.  (Doc. 153.)

[19] "Abernethy 12/15/2016 Decl." refers to the Declaration of Samuel F. Abernethy, submitted in support of Defendant Curtin's motion for summary judgment, dated December 15, 2016.  (Doc. 142.)

[20] *See Yun Yu Chen v. Holder*, 311 F. App'x 459, 460 (2d Cir. 2009) (summary order) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *see also Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) (holding that, where a brief does not sufficiently address an argument, courts are under no obligation to "scour the record, research any legal theory that comes to mind, and serve generally as an advocate").

[21] In support of his own motion for summary judgment, Curtin does not argue that all of the information he disclosed was not non-public, (*see generally* Curtin Mem.); rather, he opposes Plaintiff's motion on the basis that there is a triable factual issue on whether the seventeen disclosures that are subject to Plaintiff's motion concerned non-public information.

generally and without favoring any special person or group, or when, although known only by a few persons, their trading on it has caused the information to be fully impounded into the price of the particular stock." *SEC v. Mayhew*, 121 F.3d 44, 50 (2d Cir. 1997) (internal quotation marks and citations omitted).  Additionally, according to that same decision, to be non-public, "information must be specific and more private than general rumor," but it need not "reveal all the details of a tender offer."  *Id.* (internal quotation marks and citations omitted).

Plaintiff argues that the undisputed evidence demonstrates that NYMEX deemed the information disclosed by Curtin confidential and did not disseminate that information to the general public.  (Pl. 56.1 ¶ 101.)  Curtin concedes that NYMEX "does not publish the names of the entities that traded a particular contract, the number of different market participants that comprised the trading volume in a product or the number of trades that constituted the day's total trading in a product, the size or price of individual transactions, or which individual traders executed transactions in a particular contract for a given market participant."  (*See* Curtin Opp. 18; Curtin 56.1 Resp. ¶ 101.)  Instead, Curtin argues that the deposition testimony of two fact witnesses and his expert witness "raise the possibility that the disclosed information" was non-public.  (Curtin Opp. 18.)

Nour Beyhum, a commodities broker, testified that a customer could, if the customer wanted to, disclose certain information about a trade to a broker, and that if the customer didn't want to, "maybe the other side would release that information.  Maybe the other broker would release that information.  Maybe.  I do not know.  It depends.  You can ask."  (Abernethy 2/15/2017 Decl. Ex. 5, at 26:5-25.)[22]  According to Beyhum, a trader "could put [information

---

[22] "Abernethy 2/15/2017 Decl." refers to the Declaration of Samuel F. Abernethy, submitted in opposition to Plaintiff's motion for partial summary judgment, dated February 15, 2017.  (Doc. 164.)

about a trade] out to another broker, to another participant in the market . . . .  I could.  I do not.
My colleagues could.  It could easily get out.  Yes, it could."  (*Id.* at 47:13-19.)  Thomas
Holleran, a senior NYMEX official, testified that at a certain point in time, there was some
"name give-up."  (Abernethy 2/15/2017 Decl. Ex. 6, at 74:20-75:7.)  He also testified that "when
a trade gets done, every broker, every trader who was involved in that particular market knows
that a transaction occurred and they all have that same information," (*id.* at 92:17-21); however,
it is not clear from the excerpted testimony what specific types of information he was referring
to.

 Curtin also relies on his expert witness, who wrote in his rebuttal report that in "the
brokered [over-the-counter] market . . . at least the broker—and likely the counterparty, and
perhaps all other traders to whom the broker shopped the trade, and those traders' other
brokers—will know the details of a trade."  (Abernethy 2/15/2017 Decl. Ex. 11 ¶ 21.)  He also
testified that information about bids and offers is made public by word of mouth and instant
messages.  (*Id.* Ex. 15, at 209:12-210:2.)  He stated that, as a broker, he would "[a]t times when
asked" disclose certain types of information about a trade.  (*Id.* at 210:9-211:9.)

 As an initial matter, the evidence that Curtin offers to demonstrate that certain details
about trades are communicated among limited market participants does not demonstrate that the
information was "disseminated in a manner which makes it generally available to the trading
public."  17 C.F.R. § 1.59(a)(6).  Moreover, none of the witnesses identified by Curtin testified
specifically about the seventeen disclosures made by Curtin.  Each of the witnesses generically
and non-definitively testified that the type of information disclosed by Curtin is occasionally
leaked to some other market participants.  (*See* Abernethy 2/15/2017 Decl. Ex. 5, at 26:5-25
(Beyhum testifying that the information would "maybe" be disclosed but that he didn't know);

*id.* Ex. 6, at 74:20-75:7 (Holleran testifying that certain unspecified information becomes available after a trade); *id.* Ex. 11, ¶ 16 (Silvay testifying that after a trade, the counterparty would "likely" know the details of the trade, and that other traders would "perhaps" also know).)

Plaintiff has demonstrated, and Curtin concedes, that the information disclosed by Curtin would not, as a matter of NYMEX policy, be disseminated or generally available to the trading public.  (*See* Curtin 56.1 Resp. ¶ 101.)  Under these circumstances, Plaintiff cannot reasonably be expected to prove and the law does not require that it prove the negative—that each of the pieces of information disclosed by Curtin was not, in fact, disseminated to the trading public. Accordingly, Curtin must rebut Plaintiff's assertion that the information disclosed was non-public with proof that a jury could find in his favor.  *Graham*, 230 F.3d at 38.  Instead, Curtin offers only the testimony of two witnesses and his expert who speculate that the information may have been disclosed to certain people, and "speculation alone is insufficient to defeat a motion for summary judgment."  *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006).  Accordingly, I also find that there is no genuine issue of fact as to whether the seventeen disclosures made by Curtin that are the subject of Plaintiff's motion were non-public.

### 3.  Scienter

The scienter requirements for disclosure under Section 9(e)(1) and Regulation 1.59(d)(1)(ii) differ.  Section 9(e)(1) establishes liability for any person who "*willfully and knowingly* . . . disclose[s] for any purpose inconsistent with the performance of such person's official duties . . . any material nonpublic information obtained through special access related to the performance of such duties."  7 U.S.C. § 13(e)(1) (emphasis added).  Defendants Byrnes and Curtin are therefore only liable under Section 9(e)(1) if they disclosed information willfully and knowingly.

Regulation 1.59(d)(1)(ii) includes almost identical language to Section 9(e)(1) but omits the words "willfully and knowingly."[23]  Plaintiff argues that, in light of this omission, Regulation 1.59(d)(1)(ii) has no scienter requirement at all.  (*See* Pl. Indiv. Defs. Opp. 22 ("Regulation 1.59(d)(1) itself contains no scienter requirement."); Pl. Reply 9–10 ("[N]o scienter whatsoever . . . is required for a violation of Regulation 1.59(d)(1)(ii).").)[24]  Here again the CFTC appears to be arguing an interpretation in its briefing that is inconsistent with its prior pronouncements.  Specifically, this interpretation conflicts with the CFTC's statements at the time the Rule was adopted:  "[T]he Commission, for purposes of Regulation 1.59, *intends to apply a scienter standard* . . . ."  *See* 58 Fed. Reg., at 54,969 (emphasis added).  The CFTC also stated its interpretation that "scienter is present where an individual commits a wrongful act intentionally or with reckless disregard for his duties under the Act."  *Id.*  Therefore, although the text of Regulation 1.59(d)(1)(ii) does not include an explicit scienter requirement, the CFTC intended to include such a requirement implicitly, and Defendants Byrnes and Curtin will only be liable under the Rule if they acted intentionally or recklessly.

The parties disagree about the applicability of the scienter requirement to the materiality of the information disclosed.  (*See* Byrnes Mem. 5–6 (arguing that the scienter requirement applies to the "non-public" and "material" elements); Curtin Mem. 19 (arguing that the "scienter requirement applies to each element of the offense"); Pl. Indiv. Defs. Opp. 21 (arguing that Section 9(e)(1) requires only that the disclosures be willful and knowing).)  The statements by the CFTC discussed above also shed light on this issue.  The CFTC made clear that to satisfy the

---

[23] This omission was intentional.  *See* 58 Fed. Reg., at 54,968 ("[T]he [CFTC] continues to believe that omitting the statute's ['willfully and knowingly' standard from Regulation 1.59 is appropriate.").  The Commission went on to state, as noted above, that it intended a scienter standard to apply to Regulation 1.59.  *See* 58 Fed. Reg., at 54,969.

[24] "Pl. Indiv. Defs. Opp." refers to Plaintiff's Memorandum of Law in Opposition to Individual Defendants' Motions for Summary Judgment, dated February 15, 2017.  (Doc. 170.)

scienter requirement of Regulation 1.59(d)(1)(ii), an individual must act with "reckless disregard for his duties *under the Act*." 58 Fed. Reg., at 54,969 (emphasis added).[25]  Under the CEA, employees of self-regulatory organizations such as NYMEX (e.g., Byrnes and Curtin) have a duty not to disclose material, non-public information.  *See* 7 U.S.C. §13(e)(1).  Therefore, Defendants Byrnes and Curtin will only be liable under Regulation 1.59(d)(1)(ii) if they acted in reckless disregard for the materiality and non-public nature of the information they disregarded. It follows that a similar standard should apply to the scienter requirement for Section 9(e)(1): Defendants Byrnes and Curtin will only be liable under Section 9(e)(1) if they had knowledge that the information they disclosed was material.  This standard is in harmony and is consistent with the standard for tipper liability in the securities context.  *See SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012) (requiring that a person must "know that the information that is the subject of the tip is non-public and is material for securities trading purposes").

As discussed above, there is a triable issue of fact as to whether the information disclosed by Byrnes and Curtin was material.  *See supra* § IV.A.1.  Accordingly, it would be premature to consider whether Byrnes and Curtin knew or were reckless in not knowing that the information was material.  This question is also reserved for trial.  *See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751 (2d Cir. 1992) (denying motion for summary judgment in a securities fraud case where defendants' "thought processes" were at issue).

---

[25] NYMEX describes in detail the rulemaking history of Regulation 1.59 and argues that it also supports a finding that the CFTC intended the scienter requirement to apply to materiality.  (NYMEX Opp. 18–21.)  I agree, the rulemaking history of Regulation 1.59 is replete with examples that demonstrate the CFTC's intention that the scienter requirement apply to materiality.

### 4.  Lack of Actual or Intended Insider Trading

Defendant Byrnes argues that because Section 9(e) is titled, "Insider trading prohibited,"

he cannot be liable under Section 9(e)(1) because Plaintiff has not alleged "that insider trading

occurred or was even intended."  (*See* Byrnes Mem. 15–22.)  This argument is misguided,

because it ignores the plain text of both Section 9(e)(1) and Regulation 1.59(d)(1)(ii).  Section

9(e)(1) and Regulation 1.59(d)(1)(ii) both prohibit a covered individual from disclosing material,

non-public information "*for any purpose* inconsistent with the performance of such person's

official duties."  7 U.S.C. 13(e)(1) (emphasis added); 17 C.F.R. § 1.59(d)(1)(ii) (emphasis

added).  If Congress or the CFTC had intended to limit the prohibition on disclosures to those

that were demonstrably related to actual or intended insider trading, they would not have used

such broad language.[26]  Accordingly, Byrnes's motion on this basis is denied.

### B.  *Liability for NYMEX*

### 1.  Vicarious Liability

NYMEX seeks summary judgment on the only cause of action against it, in which

Plaintiff alleges that it is vicariously liable for the violations of Section 9(e)(1) and Regulation

1.59(d)(1)(ii) by Byrnes and Curtin.  Section 2(a)(1)(B) of the CEA provides:

> The act, omission, or failure of any official, agent, or other person acting for any
> individual, association, partnership, corporation, or trust within the scope of his
> employment or office shall be deemed the act, omission, or failure of such
> individual, association, partnership, corporation, or trust, as well as of such official,
> agent, or other person.

7 U.S.C. § 2(a)(1)(B).  As I previously explained:

> CEA § 2(a)(1)(B) is "a variant of the common law principle of *respondeat*
> *superior*," which holds an employer "strictly liable—that is to say, regardless of the

---

[26] The reference to insider trading in the title of Section 9(e)(1) does not alter the outcome, because the "title of a statute cannot limit the plain meaning of the text.  For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase."  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (internal quotation marks omitted).

> presence or absence of fault on the employer's part—for torts committed by [its]
> employees in the furtherance of [its] business." *In re Natural Gas Commodity
> Litig.*, 337 F. Supp. 2d 498, 515 (S.D.N.Y. 2004) (quoting *Rosenthal & Co.*, 802
> F.2d at 966).  NYMEX may be held vicariously liable under § 2(a)(1)(B) if (1)
> [Byrnes and Curtin] were acting as NYMEX's agents when they disclosed the
> nonpublic information to Eibschutz; and (2) [Byrnes and Curtin's] actions were
> within the scope of their employment.  *See Guttman*, 197 F.3d at 39 . . . .  "An
> employee's act is not within the scope of employment when it occurs within an
> independent course of conduct not intended by the employee to serve any purpose
> of the employer."  Restatement (Third) of Agency § 7.07(2); *see also Burlington
> Indus., Inc. v. Ellerth*, 524 U.S. 742, 756–57 (1998) (noting that an intentional tort
> is generally outside the scope of an employee's employment unless motivated by a
> desire to serve the employer's purposes); *In re Ivan F. Boesky Sec. Litig.*, 36 F.3d
> 255, 265 (2d Cir. 1994) ("While an employer may be liable for even intentional and
> criminal acts committed by its employee, those acts must in some way further the
> interests of the employer, and not solely benefit the employee."); *Lipkin v. SEC*,
> 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006) (noting, under New York law, that "an
> employee is not acting within the scope of employment if [he] was acting solely for
> personal motives unrelated to the furtherance of the employer's business" (internal
> quotation marks omitted)). . . .  While an employee who 'tips' inside information
> "must normally be viewed as on a frolic of his own," a plaintiff may properly state
> a *respondeat superior* claim by alleging "sufficient facts from which it may be
> inferred that the alleged tipper was not on a 'frolic,' but instead intended to benefit
> the employer as well as himself," *Energy Factors Inc. v. Nuevo Energy Co.*, No.
> 91-CV-4273, 1992 WL 170683, at *6 (S.D.N.Y July 7, 1992).

*Byrnes*, 58 F. Supp. 3d at 326–29 (final internal citation omitted).  "Absent direct proof of an

expressed intent to serve his own interest and not his master's, it falls to the Court or to the jury

to divine the state of the servant's mind at the relevant time."  *Gibbs v. City of New York*, 714 F.

Supp. 2d 419, 422 (E.D.N.Y. 2010).  Without such proof, the inquiry into an employee's motives

"must be an objective, not a subjective one."  *Id.*

NYMEX asserts, without citing any legal authority, that the "'in furtherance' standard is

a subjective one, focusing on the individual employee's own motives and intent."  (*See* NYMEX

Mem. 9.)[27]  Relying on Byrnes's and Curtin's responses to NYMEX's requests for admission,

---

[27] "NYMEX Mem." refers to the Memorandum of Law in Support of New York Mercantile Exchange, Inc.'s
Motion for Summary Judgment, dated December 15, 2016.  (Doc. 132.)

NYMEX asserts that each of them has admitted that he did not disclose information to Eibschutz for the purpose of conferring a benefit on NYMEX.[28]  (Hogan Decl. Exs. 38–39.)[29]  These admissions are supported, in part, by Byrnes's testimony that he was "trying to help a friend." (*Id.* Ex. 5, at 75:8-16.)  However, an employee's "subjective characterization . . . is not dispositive of the issue of whether he acted within the scope of his employment."  *Longin by Longin v. Kelly*, 875 F. Supp. 196, 203 (S.D.N.Y. 1995).  Moreover, these statements are not "direct proof of an expressed intent" by Byrnes and Curtin or of their state of "mind at the relevant time."  *Gibbs*, 714 F. Supp. 2d at 422.  Rather, these statements were made after the fact in the context of litigation.  Therefore, these statements must be considered in the context of the rest of the record evidence and the totality of the circumstances.  *See Gallose v. Long Island R.R.*, 878 F.2d 80, 83–84 (2d Cir. 1989).

Plaintiff identifies several facts that could permit a jury to find that Byrnes and Curtin intended to serve some purpose of NYMEX and were acting within the scope of their employment:  (1) "In Curtin's 2007 NYMEX self-evaluation, he wrote that a goal of his was to 'continue to grow facilitation desk knowledge base and increase the business,'"  (Pl. Mem. 26 (citing Pl. 56.1 ¶¶ 169–170, 183–85)); (2) "Byrnes and Curtin knew that Eibschutz worked for a broker making NYMEX's list of 'Top 50' Brokers for ClearPort," (*id.* (citing Pl. 56.1 ¶ 16)); (3) "NYMEX earned fees as a result of trades brokered by Eibschutz and the brokerage firms for which he worked," (*id.* (citing Pl. 56.1 ¶¶ 176–82); (4) at his unemployment hearing, Byrnes "testified:  'I was not aware that I couldn't give out all that private information.  I was told I can . . . I was supposed to help the customers and the brokers with questions that they had," (*id.*

---

[28] NYMEX does not identify any case in which a co-defendant's response to a request for admission has been dispositive—or even persuasive—proof that an individual was not acting within the scope of his or her employment.

[29] "Hogan Decl." refers to the Declaration of Albert L. Hogan III, dated December 15, 2016.  (Doc. 137.)

(citing Pl. 56.1 ¶ 157)); and (5) "Curtin testified that 'to this day, [he] still do[es]n't know why' he provided confidential trade information to Eibschutz, and that Eibschutz told him that 'he could price his customers a little better,'" and he "did not recall Eibschutz ever saying that he was using the information for cold calling purposes," (*id.* (citing Pl. 56.1 ¶ 174)).

"Whether an employee acted within the scope of his employment is a question of fact generally appropriate for resolution by the jury under the totality of the circumstances." *Byrnes*, 58 F. Supp. 3d at 327 (citing *Gallose*, 878 F.2d at 83–84)). In light of the factual dispute regarding whether Byrnes and Curtin were acting within the scope of their employment when disclosing information to Eibschutz, Plaintiff's and NYMEX's motions for summary judgment as to NYMEX's liability under § 2(a)(1)(B) of the CEA are both denied.

### 2. Injunctive Relief

NYMEX also requests that I find that Plaintiff cannot obtain the permanent injunctive relief that it seeks against NYMEX. (*See* NYMEX Mem. 14–20.) "An injunction prohibiting a party from engaging in conduct that violates the provisions of a statute is appropriate when there is a likelihood that, unless enjoined, the violations will continue. A district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct." *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250–51 (2d Cir. 1986) (internal citations omitted). Because there are triable issues of fact with regard to NYMEX's liability, it would be premature to find, as a matter of law, that injunctive relief is inappropriate. Accordingly, NYMEX's motion on this issue is denied without prejudice to refile at a later stage in the litigation.

## C. *Aiding and Abetting Liability for Eibschutz*

Section 13c(a) of the CEA makes any person who aids or abets a violation of the CEA "responsible for such violation as a principal." 7 U.S.C. 13c(a). The Second Circuit interprets this statute consistently with criminal aiding and abetting. *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 182 (2d Cir. 2013).[30] Accordingly, to be liable for aiding and abetting a violation of Section 9(e)(1), Section 13(a) requires that the person "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Id.* (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)).

Defendant Eibschutz did not move for summary judgment on his liability under Section 13c(a). Instead, on January 11, 2017, he filed a one-page letter ("January 11 Letter"), ostensibly joining the motions of Defendants Byrnes and Curtin. (*See* Doc. 151.) In that letter, Eibschutz did not contest whether he met the *Amaranth* standard for aiding and abetting; rather, he argued that he could not be liable under Section 13c(a) because Byrnes and Curtin were not liable under Section 9(e)(1). (*See* Doc. 151.) As discussed above, I have denied Byrnes's and Curtin's motions, and therefore, to the extent that Eibschutz's letter can be construed as a motion for summary judgment, Defendant Eibschutz's motion is denied.

Furthermore, Defendant Eibschutz did not submit any papers in opposition to Plaintiff's motion for partial summary judgment. Specifically, Eibschutz did not submit a Local Rule 56.1(b) statement responding to Plaintiff's Local Rule 56.1 statement of material facts. (*See* Doc. 149.) Accordingly, each of the facts set forth in Plaintiff's Local Rule 56.1 statement that

---

[30] In *In re Amaranth*, the Second Circuit interpreted the language of Section 22 of the CEA, but noted that the language tracked the language of Section 13c(a). *See In re Amaranth*, 730 F.3d at 181.

Plaintiff asserts support a finding of aiding and abetting liability, (*see* Pl. 56.1 ¶¶ 139–154), is deemed to have been admitted by Defendant Eibschutz.  *See Abramo v. City of New York*, 54 F. App'x 708, 711 (2d Cir. 2003) (summary order); *see also* Local Civil Rule 56.1(c) (explaining that all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted . . . in the statement required to be served by the opposing party").  No party, including Defendant Eibschutz, provided any argument disputing Eibschutz's aiding and abetting liability, and none of the Defendants who provided a counterstatement to Plaintiff's Local Rule 56.1 statement meaningfully disputed any of the facts alleged in support of aiding and abetting liability.  (*See* Byrnes 56.1 Resp. ¶¶ 139–54 (disputing only ¶ 153, but without providing a basis for the dispute); Curtin 56.1 Resp. ¶¶ 139–54 (disputing in part only ¶¶ 141, 147, 148); NYMEX 56.1 Resp. ¶¶ 139–54 (not disputing any facts).)  Accordingly, Plaintiff's motion for partial summary judgment as to the liability of Defendant Eibschutz for aiding and abetting the violations of Section 9(e)(1) by Defendants Byrnes and Curtin is granted, to the extent that such violations are found at trial.

## V.    **Conclusion**

For the foregoing reasons, Plaintiff's partial motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Defendants' motions are DENIED.

Trial will begin on October 6, 2020, and is scheduled to last approximately three weeks. No later than four weeks after the entry of this Opinion & Order, the parties shall submit a joint pretrial order in accordance with Rule 6(A) of my Individual Rules & Practices in Civil Cases. On the same date, but in a separate document, the parties shall propose a schedule for pretrial submissions pursuant to Rule 6(B) of my Individual Rules & Practices in Civil Cases.

The Clerk of Court is respectfully directed to terminate the pending motions at

Documents 131, 134, 140, and 141.

SO ORDERED.

Dated: September 19, 2019
       New York, New York

Vernon S. Broderick
United States District Judge